# Staunton

## GRACE YOUNG v. ELLEN DYER.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Hugh T. Williams* and *Ida Mandle*, for the plaintiff in error.

*Harris, Harvey & Brown*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action by notice of motion was brought by Mrs. Grace Young against her sister, Mrs. Ellen Dyer, to recover damages for personal injuries sustained by the plaintiff while riding as an invited guest in an automobile operated by the defendant. There was a trial by jury and the plaintiff obtained a verdict for the sum of $2,800.

The defendant filed a motion to set aside the verdict of the jury, on the ground that the verdict was contrary to the law and the evidence and was without evidence to support it. The trial court sustained the motion, and, pursuant to section 6251 of the Code, entered final judgment for the defendant.

It is assigned as error that the court erred in refusing certain instructions asked for by the plaintiff and in granting other instructions asked for by the defendant.

Plaintiff is not here seeking a new trial, but is here upon a writ of error seeking a reversal of the judgment of the trial court and the reinstatement of the verdict of the jury and final judgment in her favor. As the verdict of the jury was in favor of the plaintiff, it is obvious that plaintiff was not prejudiced by the action of the court in granting and refusing instructions. The main reliance of the plaintiff is the alleged error committed by the trial court in setting aside the verdict of the jury, upon the ground that the verdict was as a matter of law without evidence to support it, in view of the fact that plaintiff was an invited guest, and that there was no evidence that defendant was guilty of gross negligence.

In October, 1931, Mrs. Dyer, a resident of the city of Danville, invited her sister, Mrs. Young, to accompany her on an automobile ride to Charlotte Court House. Mrs. Dyer was operating the car and at the time of the accident was proceeding along an unfamiliar portion of the highway with Mrs. Young seated at her right side. The road was a curving one, and it is in evidence that for a period of time after leaving Danville the car was running at a speed of fifty miles per hour. In attempting to round a sharp right-hand curve, the car overturned and plaintiff was severely injured.

Mrs. Young's account of the trip and accident is as follows:

"We had been driving along and we thoroughly enjoyed the trip. I noticed the speedometer just before we got to the curve. I don't know how far it was and I noticed how fast we were going. We were going fifty miles an hour and I said, 'We are going fifty miles an hour and it is just like riding down Main street.' Just before, I had been pointing to the curves. I would tell her to watch out or look out and when we got to this curve I said, 'Watch out' and she jerked the car back and forth and when it

did stop, we were both in the back seat and my head and shoulders were in the back of the car and my feet on the seat and I realized my shoulder was hurt because I couldn't move. It didn't hurt me right at that minute. She was pinned to the back of the front seat. The back of the seat had come out and she had to tear her dress to get loose. The glass was broken out the back and she pulled me to a standing position and as she did my shoulder began to hurting.

"Q. You say as you went along you pointed to the curves? What was your idea?

"A. I was afraid maybe she didn't see them.

"Q. Did she pay any attention when you pointed out this one?

"A. I don't know that she did.

"Q. How fast did she go into that curve?

"A. I don't know. We were going fifty miles just before. As well as I remember she did not check her speed."

Mrs. Dyer testified that she had been driving a car for several years; that she did not observe any warning signs as she approached the curve in question; that "you would get almost on it before you know there is a curve;" that she did not know how fast she was going at the time of the accident, but that she had the car well under control; that she observed the curve about the time her sister exclaimed "Watch out!" and immediately applied the brakes; that she did not recall that her sister had warned her of the curves as they drove along the highway.

The advent of the automobile, improved highways and liability insurance has developed a source of litigation hitherto undreamed of. In former years the right of a plaintiff to recover for injuries received as a result of a defendant's negligence was based upon the common-law rule of reasonable care. In automobile accident cases wherein the right of an invited guest to recover damages is involved, a majority of the States of the Union still adhere to the rule that a host owes an invited guest the duty of exercising reasonable care in its operation, so as not to

unreasonably expose the guest to the increased hazard of modern travel.

■ The rule prevailing in States which have adopted what is now regarded as the Massachusetts rule is that before an invited guest can hold his host liable, it must be shown that the host was guilty of gross negligence in the operation of the automobile. See notes in 20 A. L. R. 1014; 26 A. L. R. 1425; 40 A. L. R. 1338; 47 A. L. R. 327; 51 A. L. R. 581; 61 A. L. R. 1252 and 65 A. L. R. 952, and cases there cited. See 1 Blashfield Cyc. Auto. Law, p. 955, and cases cited; 5-6 Huddy Cyc. of Auto. Law (9th Ed.), pp. 217 and 223.

The basic reason for the adoption, in effect, of the gross negligence rule is cogently given by the Michigan court in *Naudzius* v. *Lahr,* 253 Mich. 216, 234 N. W. 581, 583, 74 A. L. R. 1189. In construing a statute which relieved the owner or operator from liability unless the accident was caused by the gross negligence or wilful and wanton misconduct of the owner or operator, the court said:

"It would be threshing old straw to discuss the accepted fact that the motor car has presented social, financial and governmental problems which justify the legislature in reasonably classifying it apart from other vehicles in the enactment of laws. * * Generally, gratuitous passengers are relatives or friends. Exceptionally, they are mere acquaintances, invited chance pedestrians, or those who deliberately solicit rides. Since the rule of liability was announced in *Roy* v. *Kirn,* 208 Mich. 571, 175 N. W. 475, there has been considerable litigation between guests and hosts. Some between husband and wife or other close relatives has found its way to this court (citing cases). In many, probably most, of the cases between relatives or friends the real defendant is an insurance company. Ordinary negligence is not hard to prove, if guest and host co-operate to that end. It is conceivable that such actions are not always unattended by collusion, perjury and consequent fraud upon the court. While we may accept the contention that paid insurers are not objects of special

consideration by the legislature, it is inadmissible for the court to consider a law from the viewpoint that they are not entitled to a proper trial and honest determination of liability in a law suit. Nor are insurance companies alone interested in the question. The results of verdicts are mirrored in insurance rates, and the law provides a possible reason in the purse of the motor owning public, most of whom carry liability insurance. It is not inconceivable that some passengers who solicit rides may manufacture claims for liability. Groups of young folks, engaged upon a joint enterprise of social enjoyment in a borrowed car, have been known to combine to charge the owner for an accident. The law also has social features. It is well known that drivers hesitate to take neighbors for a ride or to assist on his way a weary traveler because of potential liability for injuries. Few, if indeed any, of these features seem to have manifested themselves in the use of other vehicles than motor cars. Perhaps the legislature also had other reasons for the law. In view of the abundance of personal injury litigation from the operation of motor cars and the conditions readily conceivable as pertinent to the relation of guest passengers in them, which litigation and conditions seem to be substantially absent from the use of other vehicles, it cannot be said that the classification at bar was arbitrary and without reasonable basis."

In addition to Michigan, California, Vermont, Oregon and Iowa have enacted similar statutes regulating the right of a guest to recover. In effect, those States by statute have adopted the Massachusetts rule.

In *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77, 80, this court adopted the minority rule and cited with approval *Massaletti* v. *Fitzroy,* 228 Mass. 487, 118 N. E. 168, L. R. A. 1918C, 264, Ann. Cas. 1918B, 1088, and quoted therefrom as follows: "* * justice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. There is an inherent difficulty

in stating the difference between the measure of duty which is assumed in the two cases. But justice requires that to make out liability in case of a gratuitous undertaking, the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing."

The *Boggs* v. *Plybon Case* also contains this observation: "Negligence lies in the omission of due care in the performance of some duty. That duty varies in each case as the facts vary, and so some particular act which would be actionable negligence under one set of circumstances would give no basis for recovery in another. Gross negligence *quoad* a passenger might not be negligence at all were we dealing with a trespasser and so the distinction in grades of negligence is at times not very important, if we will bear in mind shifting standards of duty. Conduct reasonable in passing a group of men on a highway might be highly negligent were that group made up of children." *Price* v. *Burton,* 155 Va. 229, 154 S. E. 499.

■ The courts are not in accord in defining "gross negligence." Like "proximate cause," "gross negligence" can only have its proper setting when encircled by the facts and circumstances of the particular case.

■ In the case at bar, the record fails to disclose any unusual conditions. The highway was not affected by inclement weather, and no circumstances are shown which should have led the defendant to infer that the curve could not be safely negotiated at the indefinite rate of speed at which the car was being driven at the time of the accident. Certainly there was no vehement protest on the part of the plaintiff as to the operation of the car. Such exclamations as "Watch out!" and "Look out!" do not indicate any real apprehension upon the plaintiff's part in view of her statement: "We are going fifty miles an hour and it is just like riding down Main street." That statement clearly indicates complete acquiescence in defendant's operation of the automobile.

■ A mere failure to skilfully operate an automobile

under all conditions, or to be alert and observant, and to act intelligently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordinarily prudent person would have done under the circumstances, and thus amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable negligence for which defendant would be responsible to an invited guest.

In our opinion, the instant case is ruled by the decision of *Boggs* v. *Plybon, supra,* which has been reaffirmed by this court in the recent case of *Jones* v. *Massie,* 158 Va. 121, 163 S. E. 63.

There is no error in the judgment of the trial court and it is affirmed.

*Affirmed.*