# Richmond

H. W. HOLLADAY V. T. C. COLT, JR.

January 17, 1935.

Present, Campbell, C. J., and Holt, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*R. Carter Scott, Jr.,* for the plaintiff in error.

*Parrish, Butcher & Parrish,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action of trespass on the case was brought by H. W. Holladay against T. C. Colt, Jr., to recover damages for personal injuries received by him as a result of the alleged negligence of Colt. Upon a plea of not guilty and the written intention of the defendant to rely upon the defense of contributory negligence, a jury was impaneled to try the issue.

Upon the conclusion of the evidence the defendant moved the court to strike all the evidence upon the following grounds:

"1—That should the court decide that the relationship alleged, namely, that of host and guest had been proven, that the evidence had failed to prove such negligence as is necessary to render liable a host to his guest under the Virginia law.

"2—That the undisputed evidence discloses a case of contributory negligence on the part of the plaintiff which should bar a recovery."

The motion of defendant was sustained, the court saying: "Gentlemen of the jury, for reasons appearing proper to the court, all of the evidence you have heard this morning is stricken out and withdrawn from your consideration. There is no evidence before you now for you to consider. The plaintiff in this case can only recover by proving by a preponderance of the evidence that he was injured by the defendant's negligence. There is no evidence before you in this case of the defendant's negligence. You may go to your room and write your verdict."

In view of the trial court's conclusion that there was no evidence of the defendant's negligence, the question of the contributory negligence of the plaintiff is not involved on this writ of error.

The action of the court in sustaining defendant's motion is assigned as error.

The defendant was president of the Cavalier Air Service, Incorporated, a Virginia corporation, while the plaintiff was employed by the corporation as a salesman.

On September 22, 1932, they attended a night football game in Williamsburg, in expectation of getting in touch with certain prospective purchasers of airplanes. After the game they attended a social affair at the home of a friend, took a drink "as a social obligation," interviewed the interested parties and left Williamsburg for Richmond at approximately 1:30 A. M. At the time of the accident complained of, defendant was driving the automobile and the plaintiff was asleep by the side of the defendant. When the parties arrived in the vicinity of Sandston the automobile of defendant collided with an automobile driven by Mrs. Bessie M. Bryant. As a result of the collision Mr. Bryant was killed, Mrs. Bryant was injured and the plaintiff alleged that he received serious injuries as a result of defendant's negligence.

The case of the plaintiff as denoted by the evidence of Mrs. Bryant and H. C. Gatewood is so brief we feel justified in quoting it. Mrs. Bryant testified in chief as follows:

"Q. Your name is Mrs. Bessie M. Bryant?

"A. Yes.

"Q. You live in the city of Richmond?

"A. Yes.

"Q. On or about September 25, 1932, was a car that you were driving in collision with any other car?

"A. Yes, it was in collision with Mr. Colt's car.

"Q. In what direction were you traveling at the time?

"A. East.

"Q. That is in the direction of Sandston?

"A. Yes.

"Q. On which side of the road were you driving?

"A. On the righthand side.

"Q. What kind of car were you driving?

"A. Graham-Paige.

"Q. About what speed were you driving?

"A. Well, about five or ten miles probably. When I saw them coming to me I slowed down.

"Q. When you saw what coming towards you?

"A. Mr. Colt's car.

"Q. How far away could you see that car?

"A. About 100 yards.

"Q. Was it at night?

"A. Yes.

"Q. Please state to the jury in your own words what happened at that time.

"Witness: Well do you want me to tell just exactly the way it happened?

"Mr. Scott: Yes.

"A. I saw this car coming toward me. It was a slight curve there but not enough to hardly turn the wheel of the car. I noticed this car continued to come to the righthand side of the road, never straightened up at all, and of course I thought every minute that the car would go to the left and go over on his side, but instead of that it came head-on into me. I had gotten off the road entirely except the length of my hand, which the State officer can tell you.

"Q. That is, on your right side?

"A. The lefthand wheels of my car were the length of my hand on the road, that is all.

"Q. You have no interest in this litigation?

"A. No, sir."

Mr. Gatewood in his examination in chief testified as follows:

"Q. Please state your full name and occupation and age.

"A. Harry C. Gatewood, 37, State police.

"Q. You made an investigation of a collision in which were cars operated by Mrs. Bryant and Mr. Colt, sometime in September of last year, did you not?

"A. Yes, sir.

"Q. You did not actually see the impact?

"A. No, sir, I did not.

"Q. What was the position of the cars when you arrived?

"A. Mrs. Bryant's car, going east, lacked about nine inches of being entirely off the highway, all four wheels; in other words, it was about a space of four inches between the inside of the left wheel and the edge of the highway, and just about straight. There was a slight ditch to the right of her car, I would say about a foot or fifteen inches deep, and possibly she would have gone in that. I don't know that she knew the ditch was there. The car going west, which was the Colt car, was at a slight angle. The rear was about I would say twenty inches off the highway, and the front wheel about twelve feet, maybe fourteen, and both cars had locked. However, the extreme right of Mr. Colt's car was not damaged. Most of the damage was I would say two-thirds of the way of the radiator to the left, and the Colt car on just about its right was not so badly damaged, but somewhat bent up, and the machinery was just about all broken out of the Bryant car.

"Q. Where was the machinery lying?

"A. Right under it, right under the car. When the wrecker came there and pulled the cars loose the gears dropped right down on the ground.

"Q. Did you see any glass on the right side of the road going towards Richmond?

"A. No, sir.

"Q. Did you see any mark on the right side of the road going to Richmond?

"A. No tire marks. I looked particularly for tire marks.

"Q. What is the approximate width of the road at that place?

"A. I guess about a twenty-foot road.

"Q. Is there ample space for two cars to pass?

"A. Yes, sir.

"Q. Did this accident happen at a curve or not, or what was the nature of the road at that point?

"Mr. R. R. Parrish: We object to that question as to where the accident happened. The officer testified he didn't get there until after the accident happened. He can tell where he located the debris he saw there.

"By Mr. Scott:

"Q. What was the nature of the roadway in reference to being curved or straight at the place where you found the cars?

"A. At the point I found the cars the road was straight. West of the point of collision or where I found the cars is about 125 yards to the point of the curve. I would say about ninety yards to the point of the curve, but that country is flat and, even taking the curve into consideration (the curve is a little winding over there) you can see over the curve.

"Q. How far distant do you suppose?

"A. Oh, I would certainly say half a mile."

The defendant testified that he was running at a speed of between forty and forty-five miles an hour; that he saw the Bryant car approaching at least a half a mile before the · impact; that it seemed to be coming slowly.

■ In view of the plaintiff's evidence that Mrs. Bryant was driving her car in a proper manner and on the proper side of the highway at the time of the accident, the statement of defendant that he was driving his car on his right hand side of the road becomes immaterial in the consideration of the court's action in striking out plaintiff's evidence.

In *Green* v. *Smith,* 153 Va. 680, 151 S. E. 282, 283, it is said:

■ "In considering a motion to strike out all the plaintiff's evidence, the evidence is to be considered very much as on a demurrer to the evidence. All inferences which a jury might fairly draw from plaintiff's evidence must be drawn in his favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless they be strained, forced, or contrary to reason. *Dove Co.* v. *New River Coal Co.,* 150 Va. 796, 143 S. E. 317; *Limbaugh* v. *Commonwealth,* 149 Va. 393, 140 S. E. 135; *Goshen Furnace Corp.* v. *Tolley's Adm'r,* 134 Va. 404, 114 S. E. 728."

This court in a number of cases since the decision in the *Green Case* has reaffirmed that doctrine. See *Jones* v. *Hanbury,* 158 Va. 842, 164 S. E. 545; *Buchanan* v. *Wilson,* 159 Va. 49, 165 S. E. 422; *Catron* v. *Birchfield,* 159 Va. 60, 165 S. E. 499.

In *Collins* v. *Robinson,* 160 Va. 520, 169 S. E. 609, Justice Gregory dealt with a situation similar to the one under review and held that the defendant Robinson, who admittedly drove his car on the wrong side of the curve and collided with the automobile of one Turner, was liable in damages to Collins.

■ In our opinion, in view of the plaintiff's evidence which tends to show that defendant negligently drove his car across the road and struck the car of Mrs. Bryant, the court should have submitted the case to the jury under proper instructions, to determine whether or not the defendant was guilty of such negligence as under the rule laid down in *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77, entitled the plaintiff to recover.

The judgment of the lower court will be reversed and the case remanded for a new trial.

*Reversed and remanded.*