# Richmond

## RAYMOND DRUMWRIGHT v. PEALEDGE P. WALKER, JR., ADM'R, ETC.

January 14, 1937.

Present, All the Justices.

The opinion states the case.

*Rixey & Rixey* and *C. C. Sharp*, for the plaintiff in error.

*Tazewell Taylor*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action by notice of motion was brought by Pealedge P. Walker, Jr., administrator of the estate of John McAllister Walker, deceased, against Raymond Drumwright and Oscar Freund, to recover damages for personal injuries resulting in the death of plaintiff's intestate while riding as an invited guest in an automobile operated by the defendant, Raymond Drumwright.

There was a trial by a jury, and a verdict returned for the plaintiff in error against Raymond Drumwright for the sum of three thousand dollars, but which found the other defendant, Oscar Freund, not guilty.

It is alleged in the petition that the trial court erred in overruling Drumwright's motion to strike the evidence as to him made at the conclusion of the evidence; erred in granting and refusing certain instructions; and erred in overruling his motion to set aside the verdict as to him and to enter final judgment in his favor, or to grant him a new trial. The trial court overruled the above motions, and entered final judgment in favor of the plaintiff against the defendant, Drumwright.

The evidence is not without conflict. On February 15, 1935, Drumwright, accompanied by Ralph Weddle, attended a dance at Ocean View. At the dance, he met the decedent, John Walker, the latter's sister, Grace Walker, and her escort, Joe Blackstone. These latter three, upon learning that Drumwright and Weddle intended to take a ride during the intermission to get some refreshments, asked to be allowed to go along. Drumwright consented, and the party of five persons left Ocean View and headed for a "hot dog" stand in the direction of Norfolk, with Drumwright driving. The decedent, John Walker, sat beside him, with Weddle also on the front seat on the right. Grace Walker and Blackstone sat on the rear seat.

It was near midnight. The moon was shining and it was clear, but cold as usual for that time of the year. All of the windows of the car were closed.

The Drumwright car proceeded at a reasonable rate of speed in a southerly direction towards Norfolk. To reach their objective, it was necessary to cross Mason's Creek Bridge, which is a wooden structure that carries Granby street, extended, across Mason's Creek, within the limits of the city of Norfolk, but in an open country. Granby street connects Ocean View, a part of the city of Norfolk, on the north, with Norfolk city, proper, on the south. The bridge runs in a straight line and is four hundred and fifteen feet long, and the roadbed of the bridge is nineteen feet wide. There is a curve in Granby street immediately north of the bridge, in the direction of Ocean View, that begins sixty-one feet from the north end of the bridge. The sixty-one feet also run in a straight line with the bridge.

As the Drumwright car proceeded south towards Norfolk, and approached Mason's Creek Bridge, it drove up behind another car going in the same direction. In the rear of the Drumwright car, was a third car driven by Oscar Freund, accompanied by a passenger, also proceeding in the same direction. All three cars were running at a moderately slow rate of speed, between ten and fifteen miles per hour; the speed limit on the bridge being twelve miles per hour. Freund, driving the third car, slowed down as he rounded the curve, and all three cars proceeded across the bridge about ten feet apart. Freund and the passenger in his car testified that when he was nearly half way across the bridge, he blew his horn twice, and turned out to the left to pass the Drumwright car. They also testified that after Freund had so blown his horn and had turned his car to the left, and had gotten the front of his car abreast of the car of Drumwright, Drumwright, without giving any signal by hand or horn, turned his car out sharply to the left, with added speed in the attempt to pass the leading car. Drumwright and the occupants of his car testified that they did not hear Freund blow his horn to pass their car. Drumwright further testified that before turning to his left, he looked in his rear view mirror, and saw no vehicle behind him. He admitted that he gave no

signal by hand or horn of his intention to turn out from the line of traffic.

These actions brought the left rear portion of the Drumwright car in contact with the right front portion of the Freund car. As a result of the impact, the left front wheel of the Drumwright car went over the foot-rail on the left side of the bridge, broke down the hand-rail thereon, and after running a distance about the length of the car, toppled over the left side of the bridge and landed on its top in the water below.

The occupants of the Drumwright car testified that it seemed to them as if the Freund car kept pushing the Drumwright car after the collision; while Freund and his passenger testified that he stopped immediately, put his car in gear and moved to about even with where the accident happened. The collision was in front of, and in plain view of the occupants of the Freund car.

Drumwright stated that he had a rear view mirror through which he could see two hundred feet back of him, and that he did look in that mirror, at some time not specified, before making the left-hand turn, but saw no one behind him when he looked. He claims to have straightened his car out after making the turn before he was struck.

There was evidence that the right fender of Freund's car was injured, and there was found a hub cap, with an indentation across its face. There is no explanation why Drumwright did not see the Freund car behind him, nor the rays of its headlights paralleling his car, which must have been, at some time near that of the collision, within a distance of less than two hundred feet.

Upon examination of counsel for Freund, Drumwright further testified:

"Q. All you know you intended to do was to cut out and pass him?

"A. That is all.

"Q. Regardless of whether there was a car in here or what it was, you just intended to cut out in front of him and back in line?

"A. Yes sir."

This is another one of those troublesome cases involving the application of the rule of law fixing the liability of the host for negligent injury to an invited guest riding in his automobile. It is now well settled in Virginia, under the fixed rule adopted in *Boggs* v. *Plybon*, 157 Va. 30, 160 S. E. 77, since followed in numerous cases, that the operator of an automobile is not liable to an invited guest riding for his own pleasure with him, except in case of gross negligence. *Jones* v. *Massie*, 158 Va. 121, 163 S. E. 63; *Collins* v. *Robinson*, 160 Va. 520, 169 S. E. 609; *Young* v. *Dyer*, 161 Va. 434, 170 S. E. 737, 739; *Poole* v. *Kelley*, 162 Va. 279, 173 S. E. 537, 541; *Thomas* v. *Snow*, 162 Va. 654, 174 S. E. 837, 839; *Gale* v. *Wilber*, 163 Va. 211, 175 S. E. 739, and *Doub* v. *Weaver*, 164 Va. 96, 178 S. E. 794.

The definition and doctrine of gross negligence has been set out in these cases as clearly and distinctly as we have been able to define it. We do not think it is now necessary to restate here these legal principles, and shall content ourselves with an approval of the principles of law set out in the above cases, and its application to the statements of the facts therein, and shall refer here only to the general fixed principle.

Each of these cases must depend upon its own peculiar facts. It is the application of the law to the particular state of facts that makes it difficult.

Holt, J., said in *Poole* v. *Kelley*, *supra*, where there was a charge of reckless speed, and of failure to give the statutory signal to pass a car ahead going in the same direction:

"We do not undertake to say that any certain speed is gross negligence where the road is wide and straight.

" 'What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under

a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court.' *Grand Trunk Railway Co.* v. *Ives,* 144 U. S. 408, 12 S. Ct. 679, 683, 36 L. Ed. 485; *Boggs* v. *Plybon,* 157. Va. 30, 160 S. E. 77.''

██ Let us examine the facts in this case. If the acts of omission, or of commission, constitute no more than a mere failure to skilfully operate the automobile under the conditions existing, such as an ordinary prudent person might omit or commit under such conditions, then the negligence will amount to only lack of ordinary care. But if a number of acts of omission and commission are so combined that reasonable and fair-minded men may differ as to whether the cumulative effect thereof evinces a form of recklessness or a total disregard of all precautions akin to wilful and wanton misconduct, it is a question for the jury.

Here, as we have seen, the evidence shows the defendant was driving with his windows closed, and he failed to hear the warning signal of the car about to pass him. He failed to give an audible warning signal with his horn before attempting to pass a vehicle proceeding in the same direction. He failed before turning from a direct line to give a hand signal of his intention to make such movement. He, evidently, failed to look in his rear vision mirror at a time when looking would have been effective, so that he could first see that the turning movement could be made in safety.

██ It is a fact of common knowledge and experience that a rear view mirror, such as is required by the statute, if properly adjusted, will necessarily show the vehicle approaching in the rear, and at night the headlights of such a vehicle make its prominence all the more pointed. With a straight road behind him for at least two hundred and sixty-one feet, and the car approaching with headlights, it is incredible that he looked into the mirror at the proper time before making

the turn. Neither courts nor juries are required to believe that which they know from ordinary experience is otherwise.

Drumwright's car was on a bridge over a stream, with water on both sides, and while it is not unlawful to pass a car on a bridge, such a passing by reason of the physical facts naturally existing as to the limited width of the bridge and the non-existence of land upon the sides thereof, makes more necessary the taking of all the precautions prescribed by law and the ordinary rules of safety to avoid the possibility of a collision.

The situation and condition of a highway, the traffic, surface, width and other conditions existing thereon, may add to the risk not only of traffic continuing in a straight line, but especially to the risk of turning out of the line of traffic to pass another vehicle. It may readily be understood that the situation of and certain conditions on a highway necessarily impose greater hazards, and consequently require the exercise of a greater precaution than where other and less hazardous conditions exist. The added circumstances further justify the legal requirement of the precaution which the driver of a vehicle should take who intends to turn from a direct line, to first see that such movement can be made in safety, and that a signal of such intention should actually be given whenever the operation of another vehicle may be affected by such movement.

There were, therefore, to be considered, at least four alleged negligent acts of omission, or of commission. 1936 Code, sections 2154 (116), 2154 (117), 2154 (122), and 2154 (149).

The attitude of the defendant is reflected in his conduct, as shown by his own language quoted herein. The omission of one of the precautions required by the Virginia statute might suggest under certain conditions only ordinary negligence. A total disregard of the several precautions required in this case, presents a question for fair-minded men to consider whether such conduct assumes an aggravated form.

■■ Under all of the facts and circumstances appearing here, and considering the general attitude of Drumwright at the time, as well as his disregard of the statutory precautions

intended for the benefit of all persons using the highways, we think it was entirely proper for the trial court to have submitted to the jury, under proper instructions, the question of negligence involved.

It may be observed that the jury accepted the evidence of Freund and found him not guilty even of ordinary negligence, ordinary negligence being all that was required to make him liable to the plaintiff, if it was a proximate cause of the injuries complained of. The finding is helpful, in that in this case it showed the jury did make a distinction between evidence of facts involving negligence and non-negligence as applied to the actions of the two parties defendant.

The plaintiff in error, in his petition and brief, takes the position that the question as to whether the assignments of errors numbered 1 and 5, as well as the assignments to a number of the instructions, are well taken, is dependent upon whether or not the defendant, Drumwright, was guilty of gross negligence. The submission of the question of gross negligence to the jury is the main error relied on. It follows from what we have just said that such assignments of errors are not well founded.

We find no error in instruction number 1, nor in instruction number 1-A. The term "gross negligence" used in instruction number 1, is defined in instruction A, asked for by the defendant, and granted by the court, and as such it became the law of the case. Instruction 1-A confines the jury to consideration of the question of gross negligence as applied to certain acts of the defendant alleged to be in violation of the statute law, and is but a supplement to instruction 1. Instructions AA and AAA were properly refused because they took away from the jury the question of gross negligence.

Instruction A was in the following language:

"The Court instructs the jury that since the plaintiff's decedent was a guest in the automobile of the defendant Drumwright, the plaintiff is not entitled to recover against Drumwright upon the mere showing of ordinary or simple negligence, or that the defendant Drumwright merely violated

some traffic rule or law, or that he failed to operate his car as a reasonably prudent person would have operated it. The defendant Drumwright is presumed to be free from negligence of any kind and to have operated his car with due care. And the burden of proof is upon the plaintiff to prove not only that the defendant Drumwright was guilty of negligence, but also that such negligence was gross or culpable. And in order to constitute gross or culpable negligence it is necessary that the plaintiff prove to the jury that the defendant Drumwright was guilty of such absence of care for the safety of plaintiff's decedent as exhibits reckless indifference to consequences. If after hearing all the evidence you are uncertain whether Drumwright was guilty of gross or culpable negligence and it appears equally as probable that he was not guilty of gross or culpable negligence as that he was, you should find for the defendant Drumwright."

█ This instruction is favorable to the defendant, although it limits the definition of gross negligence to "such absence of care * * * as exhibits reckless indifference to consequences." He ought not to be heard now to complain, when that definition was of his choosing.

█ █ It was not error to amend instructions E and F, because the plaintiff's right to recover was not solely limited to an "indifference to consequences." He had the right to recover, if there were any other acts, or omission to act that amounted to wanton, or culpable misconduct in the palpable violation of a legal duty respecting the rights of others. Gross negligence may be acts, or omissions of an aggravated character falling "short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong."

We have before us the question of whether or not, under all of the circumstances of this case, there was something more than "a mere failure to skilfully operate the automobile under all conditions or to be alert and observant"; whether the combined acts of omission and commission were "substantially and appreciably higher in magnitude than ordinary negligence"; whether there was "more want of care than

constitutes simple inadvertence" and rendered the combined defaults of an aggravated character; or any act, or acts that amounted to "indifference to present legal duty" and "a heedless and palpable violation" of such duty; whether there was "very great negligence, or the absence of slight negligence, or the want of even scant care." *Thomas* v. *Snow, supra; Young* v. *Dyer, supra.*

If the evidence in this class of cases supports the existence of one or more of the above state of facts, it then becomes a question for the jury upon proper instructions. The question of negligence is never considered as one of law unless the state of facts is such that the same conclusion will be drawn from them by all reasonable men. *Boggs* v. *Plybon, supra; Gale* v. *Wilber, supra; Poole* v. *Kelley, supra.*

We find no error in granting instruction F-1, asked for by the defendant, Freund. The principle of this instruction clearly sets out the legal duty of the defendant, Drumwright, to give a signal of his intention to turn from the direct line of traffic before making such a turn.

Not being able to read the minds and hearts of men, we can evaluate the evidence only by the accepted rules and standards for measuring the weight and quality thereof. It is necessary that the courts should scrutinize the evidence most carefully and apply the law with the utmost intelligence. "We have a verdict confirmed by the judge, who saw the witnesses and heard the evidence, and it must be sustained as there is substantial evidence to support it. All presumptions are in its favor." *Poole* v. *Kelley, supra.*

On the whole state of facts in this case, we are of opinion that there is no error in the judgment of the trial court, and its judgment will be affirmed.

*Affirmed.*

GREGORY, J., dissenting.

When we accept as true the evidence of the plaintiff and his witnesses, the most that it tends to establish is that Drum-

wright was driving slowly over a wide bridge with the windows of his car closed; that he did not hear the horn of the car that was following him and that he did not sound his own horn or give the hand signal of his intention to pass the car immediately in front of him and that he failed to look effectively in his rear vision mirror. No doubt the defendant was shown to be guilty of ordinary negligence, but I do not think the evidence was sufficient to justify the submission of his gross negligence to the jury. He failed to operate his automobile skilfully under the conditions. He may not have been as alert as he should have been or he may have failed to do what a prudent person should have done under the circumstances and thus, he may have failed to exercise ordinary care, but inattention, lack of alertness, mere inadvertence or attempting to pass another car on the bridge does not constitute sufficient evidence of wanton, wilful or reckless conduct or of gross negligence to warrant its submission to a jury. *Young* v. *Dyer*, 161 Va. 434, 170 S. E. 737.

It is practically conceded by the majority that no one of the negligent acts standing alone would have justified the court in submitting the question of gross negligence to the jury, but the majority are of the opinion that all of the acts combined are sufficient for that purpose. In other words, it may be that while each act is only ordinary negligence, yet, when they are added together the result is gross negligence. In this view I cannot concur.