# Richmond

MARIE E. MASTERS v. LILLIAN R. CARDI AND LUCY CARDI,
AN INFANT, ETC.

April 21, 1947.

Record No. 3182.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley
and Buchanan, JJ.

The opinion states the case.

*Jones & Woodward*, for the plaintiff in error.

*Ralph R. Repass* and *Francis M. Hoge*, for the defendants in error.

GREGORY, J., delivered the opinion of the court.

The record embraces two cases which were tried together before a jury.  Verdicts and judgments were rendered for the plaintiffs, Mrs. Lillian R. Cardi, and her daughter, Miss Lucy Cardi, both residents of Cranston, Rhode Island.  Mrs. Marie E. Masters, a resident of Los Angeles, California, was the defendant.

Mrs. Masters and her daughter, Mrs. L. L. Meyers, had left their home in California and gone to Davisville, Rhode Island, where Mr. Masters, the husband and father, was stationed as a member of the C. B.'s, the construction battalion of the United States Navy.  He was expecting to be sent overseas.  While at Davisville, Mrs. Masters and her daughter were employed in the Navy ship service store in order to help pay their expenses.  Miss Cardi was also employed at this same place.

Mrs. Masters received a telegram on April 17, 1944, informing her of the death of her father in California, which occurred on the preceding day.  However, she wished to be with her husband as long as possible and wired her brother that she would not be there for the funeral.  Four days later Mr. Masters was sent overseas.  Mrs. Cardi's mother also lived in California, and her son was in a hospital in Abilene, Texas.  Miss Cardi arranged for herself and her mother to go with Mrs. Masters and her daughter to California.  The trip was planned so that they would pass through Abilene, Texas, which meant that they would go a considerable distance out of the way in order that Mrs. Cardi might visit her son who was in the hospital there.  Accordingly, the party left Cranston, Rhode Island, about eleven p. m. on Saturday, April 22, 1944, in a 1939 Plymouth four-door sedan, in good condition, which belonged to Mrs. Masters.  In the party were Mrs. Masters, her daughter Mrs. Meyers, Mrs. Lillian Cardi, her daughter Lucy Cardi, and a daughter-in-law of Mrs. Cardi, who is Mrs. Clara Cardi—five persons in all.

Mrs. Masters was in a hurry to get to California in a short time because they were holding the burial of her father for

her arrival. She had important papers in her lock box in California to which she had the key. She drove the car from the time they left Cranston, Rhode Island, on Saturday night at eleven p. m. until nine a. m. Sunday morning when she was relieved by Mrs. Clara Cardi, who drove until 12:30 p. m. Sunday, at which time they had reached Philadelphia, where they stopped for midday dinner. After this Mrs. Masters drove again from two p. m. Sunday until about eleven p. m. Sunday night when they reached Staunton, Virginia, where they stopped for the night. The weather was bad when they left Rhode Island, and on Sunday it was quite foggy and raining just a little. On Monday morning at 7:30 the party left Staunton and Mrs. Masters was driving. It was raining very hard and continued to rain all day until the time of the accident which occurred near Atkins, Virginia. The road was very wet. From 7:30 in the morning until about 1:30 in the afternoon Mrs. Masters continued to drive, and her speed was estimated at from 50 to 55 miles an hour during that time. The war-time speed limit which was then in force was 35 miles per hour.

The windows of the car were closed and just before the accident were "all steamed up", and there was considerable smoke in the car due to the fact that three of the occupants had been smoking. The rain was falling so fast and in such large drops that one could scarcely see through the windshield, though the windshield wipers were working. One of the witnesses said, "It was raining so hard it didn't matter whether you had a windshield wiper or not." Another witness said that the windshield wipers did not clear the vision through the windshield. She also said, "The windows were all smoky and you couldn't see where you were going."

About two and a half miles before the scene of accident was reached they overtook and passed a Ford car driven by Garland Hedrick. He was driving 35 miles per hour at the time and was checking his speedometer closely from time to time. After they passed the Hedrick car Mr. Hedrick did not see them again until he noticed the wreck on the side of the road about 30 yards before he reached it.

At the time of the accident the testimony shows that Mrs. Masters was driving from 50 to 55 miles per hour. Mrs. Lillian Cardi warned Mrs. Masters three times on Monday morning between Staunton and the point of accident that she was driving too fast. Mrs. Masters reassured her that nothing was going to happen and stated "don't be afraid." Miss Cardi warned her that she was going too fast just after they left Staunton and again just before the accident, to which Mrs. Masters replied, "Don't worry, I can drive all right."

The highway at the scene of accident is straight and level. The surface of the macadam is about 20 feet wide and there is a smooth shoulder on each side of the highway. On the south side of the highway there is a steep bank some twelve feet high. The right wheels of the defendant's car were driven off the north side of the hard surface on to the shoulder for some eight or ten feet. Then the defendant cut her steering wheel to the left and the car swung sharply to the south side of the highway, climbed part of the way up the 12-foot bank, and ran along the bank in a westerly direction for 47 steps, then rolled over and down the bank and came to rest. The car was badly damaged. In a short time Mr. Hedrick had reached the scene and he rescued all the occupants and carried them to the hospital in Marion. The plaintiffs were seriously injured.

There are two issues presented by the assignments of error. One involves the propriety of the court in submitting to the jury by an instruction the violation by the defendant of the 13-hour driving statute (Virginia Code, 1942 (Michie), sec. 2154(137) ). The other issue is whether or not the evidence is sufficient to support the verdicts.

It is conceded by the defendant that the evidence is sufficient to support a finding that she drove more than 13 hours out of the 24 hours immediately preceding the accident, which was contrary to the statute. There was ample evidence to sustain the finding that the defendant was exceeding the 35-mile speed limit which was in effect at the time. Code, 1942 (Michie), sec. 2154(109),(b),(5).

▐ The purpose of limiting the number of hours one is permitted to operate a motor vehicle on the highways is to increase the safety of life, limb and property. The law recognizes that there is a limit to the strength and endurance of everyone. It is common knowledge that one whose strength and endurance have been worn down by long and excessive driving is not as active and alert as he should be to operate properly his automobile. His sensibilities and reactions are dulled and he may not perceive and comprehend dangerous situations as keenly as he might if he had not driven for so long a time.

The purpose of the 35-mile speed limit is stated in the title to the Act. (See Acts Extra Session 1942, pp. 7-9.) It is, among others, to insure greater safety and security on the highways.

The evidence discloses that the violation of these statutes might have efficiently contributed to the injuries to the plaintiffs. At least the jury were entitled to consider them along with the other facts and circumstances in the cases in arriving at their verdicts. The instruction (P 3-A) simply told the jury that it was negligence to violate the statutes and that if they believed it was the proximate cause of the wreck they should consider it along with the other established circumstances in determining whether the defendant was guilty of gross negligence. We are not impressed with the objection to the instruction. It was a proper one in these cases.

*Dinges* v. *Hannah*, 185 Va. 744, 40 S. E. (2d) 179, is unlike the cases at bar. There we held that even if the 35-mile speed limit had been violated it was not shown that excessive speed caused or in any way contributed to the collision. In the cases at bar the jury could have found, and no doubt did find, that exceeding 35 miles per hour in a hard rain, when there was little or no visibility, was a cause of the accident.

On the motion to strike the plaintiffs' evidence the defendant for the first time in the trial court asserted an entirely new defense. It was then claimed that the plaintiffs

had been guilty of contributory negligence. This defense had not been relied upon in any of pleadings nor did she request that it be submitted to the jury by an instruction. The claim was made that the plaintiffs acquiesced in the violations of the two statutes by the defendant and failed to remonstrate with her for such violations, and were accordingly guilty of contributory negligence. To sustain her defendant cites and relies upon *Sutton* v. *Bland*, 166 Va. 132, 184 S. E. 231. That case however is not like the present ones. There we denied a recovery for the guests against the host because they had some measure of control over the operation of the car. They not only made no protest about the operation of the car but acquiesced therein. In the cases at bar the plaintiffs exercised no control over the defendant in her operation of the car. Their protests made to her were not heeded. They were reassured by her that she was a safe and good driver.

The burden was upon the defendant to prove the plaintiffs guilty of contributory negligence. We think she failed to carry that burden.

Finally we are told that the verdicts are not supported by the evidence. In order to determine this issue we must, to some extent, reexamine the evidence and apply well established rules. We all know that a plaintiff who sues his host for injuries received in an automobile accident must prove that his host has been guilty of gross negligence, and generally the question is one for the jury.

In these cases the defendant was driving on a straight, wet, hard-surfaced road at from 50 to 55 miles per hour, with very poor visibility or vision through her windshield. This was due to the exceedingly hard rain, the smoke in the car and the sweating of the windows and the windshield. But notwithstanding the obstruction to her vision, she did not slacken her speed. She was in a hurry to reach California. When these facts are considered in the light of the additional facts that she had

failed to heed the warnings of the plaintiffs, and that she negligently drove the car off the hard surface on to the soft shoulder, then diverted it back to the hard surface, losing control of it; and when we consider the reasonable inference that the jury might have drawn from the fact that the defendant had driven for a long time without sufficient rest and sleep, it seems quite clear that a case for the jury was made on whether or not she was guilty of gross negligence. See *Wright* v. *Swain*, 168 Va. 315, 191 S. E. 611; *Drumwright* v. *Walker*, 167 Va. 307, 189 S. E. 310, and *Thornhill* v. *Thornhill*, 172 Va. 553, 2 S. E. (2d) 318.

The jury might properly have found that the defendant was guilty of negligence when she drove the car off the hard surface on to the soft shoulder and lost control of it; that she was also guilty of negligence in violating the 35-mile speed limit, and in operating the car more than 13 hours in 24; that she drove too fast under the circumstances; and that the combined force of all of her negligent acts, taken as a whole, was sufficient to cause the jury to conclude that she was guilty of gross negligence.

Gross negligence has been defined in many of our opinions and we need not now define it again. Each case must depend upon its own peculiar facts, and we generally leave the determination of the question to the jury. It is their province to consider all of the evidence including the circumstances and surroundings of each case and then ascertain whether the acts and conduct of the host amount to gross negligence. It may be noted however that since the doctrine was accepted in Virginia, in *Boggs* v. *Plybon*, 157 Va. 30, 160 S. E. 77, there has been a trend to extend rather than limit the application of the doctrine. The doctrine was made statutory in 1938. Code, sec. 2154(232).

In *Drumwright* v. *Walker, supra,* we held that where there are shown several acts of negligence each of itself may not be sufficient to sustain a finding of gross negligence, yet they may be added together and the aggregate constitute sufficient evidence upon which a verdict may be found

against the host. In the cases at bar the jury had the right to consider each separate act of negligence of the defendant and to find from the whole that she was guilty of gross negligence.

The judgments are accordingly affirmed.

*Affirmed.*

NOTE: In the trial of these cases witness Armistead, an insurance adjuster, testified. The court refused to permit counsel for the plaintiffs to show his interest in the cases after he had testified in contradiction of the plaintiffs relative to their testimony of their repeated warnings to the defendant about her speed. At the time of the trial the opinion in *Highway Exp. Lines* v. *Fleming*, 185 Va. 666, 40 S. E. (2d) 294, deciding this particular point, had not been published. Mr. Justice Hudgins, in rendering the opinion of the court in that case, and in holding that the interest of an insurance adjuster who testifies in such cases may be shown, had this to say: "The activity of this witness in preparation for the trial and his testimony on direct examination made it imperative for the jury to know his full relation to the named defendant and the insurance carrier. He, as a paid employee, visited the scene a few days after the accident. He interviewed numerous witnesses and reduced their statements to writing. In the trial he was introduced by the defendant in an attempt to discredit or impeach the testimony of numerous witnesses introduced by plaintiff. The jurors, in deciding whether defendant was negligent, had to determine what weight, if any, they must give to the testimony of the agent for the insurance carrier. If they accepted his testimony, they had to discard the testimony of many of plaintiff's witnesses. Under these circumstances, the jurors were entitled to know his interest or bias and his relation to the party ultimately liable. As Judge Soper said, in *Sprinkle* v. *Davis*, 111 F. (2d) 925, 128 A. L. R. 1101, such evidence should be admitted for the value the jury may accord to it. The trial court, if requested by proper instruction, should inform the jury of the purpose for which such evidence was admitted."