## Staunton

### JESSE G. ALSPAUGH, JR. v. ELIZABETH DIGGS AND HARVEY KARKUS.

September 10, 1953.

Record No. 4091.

Present, All the Justices.

*Hughes, Little & Seawell, Thomas M. Johnston* and *Irvin P. Hoag, Jr.,* for the plaintiff in error.

*Perkins, Battle & Minor* and *William B. Spong, Jr.,* for the defendant in error.

HUDGINS, C.J., delivered the opinion of the court.

Elizabeth Diggs and Harvey Karkus instituted separate actions against Jesse G. Alspaugh, Jr., to recover damages for personal injuries sustained when the automobile in which they were riding as non-paying passengers and operated by Alspaugh ran off the edge of the highway and struck an electric pole. The two actions were tried together and two judgments were entered, one on a verdict for $25,000 in favor of Elizabeth Diggs and the other for $600 in favor of Harvey Karkus. This writ of error brings these judgments to this court for review.

Defendant's main contention is that the evidence is insufficient to convict him of gross negligence. This necessitates a review of the evidence.

Elizabeth Diggs met defendant in March, 1951, and saw him every night thereafter until the accident occurred on April 17, 1951. She, on the night in question, invited defendant, Harvey Karkus and Euna Lee Muth to meet at her apartment in Waynesboro, Virginia. Between 9:30 and 10:00 p. m., the four, in a car operated by defendant, drove to Brookwood, an inn in Waynesboro situated eight or nine blocks from the Diggs apartment. Shortly after

11:00 p. m. the four left Brookwood Inn, intending to return to the Diggs apartment. Elizabeth Diggs was sitting on the front seat to the right of the driver and Karkus and Mrs. Muth on the back seat. Defendant, after driving several blocks, turned onto Main street, a four-lane highway comprising that part of Route No. 250 extending east and west through the city. Defendant had not been drinking and was driving in a careful and unobjectionable manner, at a speed of from 25 to 30 miles per hour. As he was going around a left-hand curve, his car went over the right curb, two to four inches high, and struck a light pole standing within three feet of the curb, resulting in the injuries to plaintiffs.

The following are excerpts taken from the testimony of the three passengers in the car, the only eyewitnesses, except defendant, to the accident:

Elizabeth Diggs was asked:

"Q. I wish you would tell the jury and the Court what happened from there, from the time you turned onto Main Street?

"A. Well, we were just riding along as usually anyone, very quiet; and Jess * * *—Mr. Alspaugh—had a cigar in his mouth and he reached over to light it, to get the lighter,"

\* \* \* \* \* \* \*

and as he "reached for a lighter * * * we crashed.

"Q. What did you crash into?

"A. Into a telephone pole.

"Q. Was there anything in the nature of Mr. Alspaugh's driving prior to that time that would raise any apprehension in you?

"A. No, sir, it was not.

"Q. When did you first realize you were going to crash?

"A. Just within a second. We were right on it. We just—(the witness snapped her finger).

\* \* \* \* \* \* \*

"A. * * * It was so sudden it was in a couple of seconds (Witness again snapping her finger)."

Euna Lee Muth testified that she was sitting on the back seat behind defendant and was not paying any particular attention to the operation of the car. Defendant was not drinking or speeding "or anything like that." She saw defendant lean over far enough to reach the lighter on the dashboard. As he did so the car struck the pole.

Karkus testified that he had a mental picture of how the accident occurred. He said: "I remember by a picture. I have a picture of looking up suddenly. I don't remember the reason why I looked up. And at that instant I saw we were headed for a telephone pole. I also saw a red glow about the size of a nickel in between Mr. Alspaugh and Mrs. Diggs, and Mr. Alspaugh bending over.

"Q. To what extent was Mr. Alspaugh bending over?

"A. That is hard—it is hard for me to tell but I don't believe he was sitting straight up. I think he was leaning over a little bit, lighting a cigar or cigarette. I don't know which it was.

\*     \*     \*     \*     \*     \*     \*

"Q. At what angle did the car strike the pole?

"A. Well, it went straight into it."

Code, sec. 8-646.1, provides that a non-paying passenger shall not be entitled to recover damages for injuries from the operator of a motor vehicle unless such injuries result "from the gross negligence or wilful and wanton disregard of the safety" of such passenger.

The question of gross negligence as distinguished from simple or ordinary negligence has been discussed at length in a great many Virginia cases involving automobile accidents, beginning with *Boggs* v. *Plybon*, 157 Va. 30, 160 S. E. 77, and continuing through *Crabtree* v. *Dingus*, 194 Va. 615, 74 S. E. (2d) 54.

We said in *Young* v. *Dyer*, 161 Va. 434, 440, 170 S. E. 737, that "A mere failure to skilfully operate an automobile under all conditions, or to be alert and observant, and to act intelligently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordi-

narily prudent person would have done under the circumstances, and thus amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable negligence for which defendant would be responsible to an invited guest."

We have held in numerous cases that in order for a non-paying passenger to recover damages of the operator of a motor vehicle, he must show that the operator was guilty of that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of his safety. "Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence * * *. It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is, or ought to be, known to have a tendency to injure." *Chappell* v. *White*, 182 Va. 625, 29 S. E. (2d) 858; *Wright* v. *Osborne*, 175 Va. 442, 9 S. E. (2d) 452; *Thornhill* v. *Thornhill*, 172 Va. 553, 2 S. E. (2d) 318.

Proof of gross negligence depends upon the facts and circumstances of each particular case. If reasonably fair-minded men may differ as to the conclusion of fact to be drawn from the evidence, a jury question is presented; if reasonably fair-minded men may not differ as to such conclusion of fact, the question of whether gross negligence has been established becomes one of law to be decided by the court notwithstanding the verdict of the jury. *Lennon* v. *Smith*, 173 Va. 322, 2 S. E. (2d) 340.

We said in *Carroll* v. *Miller*, 175 Va. 388, 399, 9 S. E. (2d) 322, "In many instances we have to deal with borderline cases, and it is our duty to support verdicts when they, in turn, are supported by credible evidence, but not otherwise. Moreover, it is probably more difficult for a jury to determine whether a proven negligence be simple or gross than it is for them to decide if actionable negligence at all

has been shown. Indeed, it is difficult to define gross negligence within the purview of the rule under discussion. Putting one's self in the place of the parties, to be gross it should shock fair-minded men."

We have applied these principles in numerous cases and denied the non-paying passenger the right to recover from the defendant motor vehicle operator, on the ground that the evidence of gross negligence was insufficient to submit the question to the jury.[1] In numerous other cases the same principles were applied, and it was held that gross negligence was established, or the evidence was sufficient to present the question to the jury.[2]

The act of negligence upon which plaintiffs rely in the case under consideration is not so gross as to "shock fair-minded men."

█ Plaintiffs contend that defendant was guilty of a deliberate act of inattention and that such deliberate inatten-

---

[1] Crabtree v. Dingus, 194 Va. 615, 74 S. E. (2d) 54.
Sibley v. Slayton, 193 Va. 470, 69 S. E. (2d) 466.
Miller v. Ellis, 188 Va. 207, 49 S. E. (2d) 273.
Reel v. Spencer, 187 Va. 530, 47 S. E. (2d) 359.
Millard v. Cohen, 187 Va. 44, 46 S. E. (2d) 2.
Hill v. Bradley, 186 Va. 394, 43 S. E. (2d) 29.
Austin v. Austin, 186 Va. 382, 43 S. E. (2d) 31.
Woodrum v. Holland, 185 Va. 690, 40 S. E. (2d) 169.
Richter v. Seawell, 183 Va. 379, 32 S. E. (2d) 62.
Keen v. Harman, 183 Va. 670, 33 S. E. (2d) 197.
Carroll v. Miller, 175 Va. 388, 9 S. E. (2d) 322.
Lennon v. Smith, 173 Va. 322, 2 S. E. (2d) 340.
Hawkins v. Sydnor, 170 Va. 267, 196 S. E. 619.
Kent v. Miller, 167 Va. 422, 189 S. E. 332.
Grinstead v. Mayhew, 167 Va. 19, 187 S. E. 515.
Doub v. Weaver, 164 Va. 96, 178 S. E. 794.
Morris v. Dame's Ex'r, 161 Va. 545, 171 S. E. 662.
Young v. Dyer, 161 Va. 434, 170 S. E. 737.
Jones v. Massie, 158 Va. 121, 163 S. E. 63.
Boggs v. Plybon, 157 Va. 30, 160 S. E. 77.
[2] Solterer v. Kiss, 193 Va. 695, 70 S. E. (2d) 329.
Carr v. Patram, 193 Va. 604, 70 S. E. (2d) 308.
McDowell v. Dye, 193 Va. 390, 69 S. E. (2d) 459.
Mitchell v. Wilkerson, 193 Va. 121, 67 S. E. (2d) 912.
Steele v. Crocker, 191 Va. 873, 62 S. E. (2d) 850.
Via v. Badanes, 189 Va. 44, 52 S. E. (2d) 174.
McGehee v. Perkins, 188 Va. 116, 49 S. E. (2d) 304.

tion is a common *indicium* of gross negligence. The only deliberate act of inattention which the testimony tends to establish is that defendant leaned slightly forward for the purpose of getting the cigarette lighter on the dashboard. The uncontradicted testimony is that the lighter was near the steering wheel on the dashboard and that it was not necessary to "bend over" in order to reach it. There is no evidence tending to show that defendant failed to keep a proper lookout or that he took his eyes off of the highway, unless it be possible to draw such inference from the fact that the car left the highway and struck a pole. This evidence tends to establish very slight inattention, if any.

Defendant testified that after he entered the curve he saw the lights of car rapidly approaching from the opposite direction, on the wrong side of the highway and in his lane of traffic; that in order to avoid a head-on collision, he attempted to drive to the right around the pole into a gravel

Crew v. Nelson, 188 Va. 108, 49 S. E. (2d) 326.
Waller v. Waller, 187 Va. 25, 46 S. E. (2d) 42.
Masters v. Cardi, 186 Va. 261, 42 S. E. (2d) 203.
Mountjoy v. Burton, 185 Va. 936, 40 S. E. (2d) 803.
Chappell v. White, 182 Va. 625, 29 S. E. (2d) 858.
Lipscomb v. O'Brien, 181 Va. 471, 25 S. E. (2d) 261.
Remine v. Whited, 180 Va. 1, 21 S. E. (2d) 743.
Jones v. Pasco, 179 Va. 7, 18 S. E. (2d) 258.
Smith v. Turner, 178 Va. 172, 16 S. E. (2d) 370.
Brown v. Branch, 175 Va. 382, 9 S. E. (2d) 285.
Wright v. Osborne, 175 Va. 442, 9 S. E. (2d) 452.
Worcester v. McClurkin, 174 Va. 221, 5 S. E. (2d) 509.
Yorke v. Cottle, 173 Va. 372, 4 S. E. (2d) 372.
Thornhill v. Thornhill, 172 Va. 553, 2 S. E. (2d) 318.
Hackley v. Robey, 170 Va. 55, 195 S. E. 689.
Watson v. Coles, 170 Va. 141, 195 S. E. 506.
Yonker v. Williams, 169 Va. 294, 192 S. E. 753.
Stubbs v. Parker, 169 Va. 676, 192 S. E. 820.
Wright v. Swain, 168 Va. 315, 191 S. E. 611.
Lee v. Moore, 168 Va. 278, 191 S. E. 589.
Drumwright v. Walker, 167 Va. 307, 189 S. E. 310.
Holladay v. Colt, 163 Va. 866, 177 S. E. 862.
Gale v. Wilber, 163 Va. 211, 175 S. E. 739.
Thomas v. Snow, 162 Va. 654, 174 S. E. 837.
Margiotta v. Aycock, 162 Va. 557, 174 S. E. 831.
Collins v. Robinson, 160 Va. 520, 169 S. E. 609.

driveway leading to a Gulf service station, but made the turn too late to avoid striking the pole.

It is conceded that immediately before the impact defendant was sober and was operating his car in a careful manner, at a reasonable rate of speed, around a gradual left curve and he had no opportunity to avoid the impact after the danger became apparent.

These facts do not bring the case within the influence of *Chappell* v. *White*, 182 Va. 625, 29 S. E. (2d) 858, upon which plaintiffs rely to support their contention. In that case the evidence for plaintiff tending to establish gross negligence was that defendant deliberately took her eyes off the road, bent over to her right as if reaching for something below the level of the front seat, and while in this position the car traveled diagonally from the right to the left side of a wide highway; that when defendant straightened up and discovered the danger, she grabbed the steering wheel with both hands, but did nothing to avoid the accident, although she had ample opportunity to turn the car to the right or apply the brakes. She permitted the car to continue to travel all the way across the highway and 75 to 90 feet diagonally across the left shoulder before it turned over and came to rest at the bottom of a ditch six or more feet from the hard surface. This evidence tended to prove that the inattention was not only deliberate, but continued after defendant discovered the danger in ample time to avoid the accident.

To undertake to review all the automobile cases in which gross negligence was involved, many of which are cited in the briefs, would serve no useful purpose. There is little controversy about the general principles involved. The difficulty arises in the application of the principles to the particular facts in each case. It would shock one's sense of justice to hold that, under the facts and circumstances stated, this defendant was guilty of gross negligence.

The only other contention of defendant that merits consideration relates to the action of the trial court in re-

fusing to admit in evidence a written statement signed by one of the plaintiffs.

On April 23, 1951, six days after the accident, Elizabeth Diggs, while in the hospital, at the request of defendant against whom a criminal charge for violating the traffic laws was threatened or pending, signed the following statement:

"April 23, 1951.

"We were driving on the night of April 17, 1951 from the east to the west side of Waynesboro, Va. about eleven thirty at night when a car traveling east at a high rate of speed on the wrong side of the road forced us off of the road into a pole, causing injury to me Elizabeth Diggs, J. G. Alspaugh, Jr., driver and Harvey Carcus.

"This accident was unavoidable and the driver is not to be blamed or held responsible.

(Signed) Elizabeth T. Diggs
Witnessed—S. G. Hobart, Jr., M. D."

Elizabeth Diggs did not deny signing the statement, but testified that she did not remember signing it. She was asked:

"Q. I am asking you, Mrs. Diggs, if that is your signature?
"A. * * * It looks like it but I don't know how it got there."

In answer to a question as to whether she told Doctor Hobart what was in the written statement, she said: "* * * I was so sick then and so ill I don't know anything I said. If I said it I must have been out of my head. I don't recall anything I said like that."

The trial court held that the written statement was not admissible, but admitted the testimony of Doctor Hobart to the effect that Mrs. Diggs on several occasions, in his presence, said that defendant was not to blame for the accident.

Defendant contends that the writing is "a statement against interest made by a party in litigation," and was, therefore, admissible evidence.

The terms and conditions upon which a writing signed by any witness may be introduced to contradict him are set forth in Code, sec. 8-293. However, the General Assembly, on the recommendation of the 1919 Code Revisors, added to this section a final sentence which reads as follows: "But this section is subject to this qualification, that in an action to recover for a personal injury or death by wrongful act or neglect, no *ex parte* affidavit or statement in writing other than a deposition, after due notice, of a witness as to the facts or circumstances attending the wrongful act or neglect complained of, shall be used to contradict him as a witness in the case."

The history of this provision of the statute was stated at some length in *Harris* v. *Harrington*, 180 Va. 210, 22 S. E. (2d) 13. There, at page 220, we said: "This brief history of section 6216 [now Sec. 8-293] as well as the language used, clearly indicates that the provisions of the statute are confined to the contradiction of a witness by the introduction of a prior inconsistent statement in writing. The purpose of the addition to the statute was to correct an unfair practice which had developed, by which claim adjusters would hasten to the scene of an accident and obtain written statements from all eye-witnesses. Frequently, these statements were neither full nor correct and were signed by persons who had not fully recovered from shock and hence were not in full possession of their faculties * * *.

"The statute was intended to correct these abuses, and to this extent it is a modification of the rule as to best evidence, but it was never intended to prohibit the proof of prior inconsistent statements by oral testimony. * * * Clearly it was the intention of the 1919 Code Revisors to permit the jury to determine the truth of the matter under investigation from an oral examination of the witness on the stand, uninfluenced by an *ex parte* written statement prepared by an interested party for the purpose of introducing it in evidence." Cf. *Liberty Mutual Ins. Co.* v. *Venable*, 194 Va. 357, 73 S. E. (2d) 366.

The two actions are within the purview of the section as they are actions to recover damages for injuries alleged to have been caused by defendant's negligence. Defendant, in his argument, concedes that the statute in this class of actions prohibits the introduction of an *ex parte* written statement of a witness not a party to the action, but contends that it was never intended to apply to a written statement made by a party in interest.

The statute makes no distinction between a witness who is a party to the action and a witness who is not. The same reasons which led to the adoption of the statute would seem to apply to a party litigant, if called as a witness, as well as to a disinterested party.

Code, sec. 8-285, is an old statute adopted in 1866 (Acts 1866-67, p. 615), which removes the common law disqualifications of persons as witnesses because of interest. It expressly provides that an interested party is competent to testify, but when called as a witness he "is subject to the rules of evidence and practice applicable to other witnesses."

It was said in *Hord's Adm'r* v. *Colbert & al.*, 28 Gratt. (69 Va.) 49, 56, "Whatever may have been the distinction formerly between parties and other witnesses, that distinction has been entirely abrogated by the statute, which declares that no witness shall be incompetent to testify because of interest; and in all actions, suits, and other proceedings of a civil nature, at law or in equity, the parties thereto shall, if otherwise competent to testify, and subject *to the rules of evidence, and of practice applicable to other witnesses,* be competent to give evidence * * *."

When an interested party in a tort action takes the stand in his own behalf, or is called as a witness by his opponent, he is subject to the same rules of evidence and practice applicable to any other witness. This being true, the introduction in evidence of a prior *ex parte* written statement signed by an interested party is within the purview of the Code, sec. 8-293, and cannot be used for the purpose of contradicting him. We, therefore, find no error in the ruling of the trial court on this question.

For the reasons heretofore stated the judgment of the trial court is reversed, the verdict of the jury set aside, and final judgment will be here entered for defendant.

*Reversed and final judgment.*