# Richmond

JOSEPH P. WATSON v. CHARLES GARLAND COLES.

March 10, 1938.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning
and Spratley, JJ.

The opinion states the case.

*Tom E. Gilman, Vincent L. Parker* and *James G. Martin & Son,* for the plaintiff in error.

*Robert F. McMurran,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

The plaintiff in this case, Joseph P. Watson, brought this action by notice of motion to recover damages for serious

personal injuries received while riding as a guest in an automobile operated by the defendant, Charles Garland Coles.

There were two trials, each before a jury. On the first trial, the jury was unable to agree. On the second trial, the trial judge refused to grant a motion to strike out the evidence of the plaintiff at the conclusion of the plaintiff's evidence, and the jury, after having heard all of the evidence, returned a verdict of $5,000 against the defendant.

The trial court set aside the verdict as contrary to the law and the evidence, and entered judgment for the defendant. To this action of the trial court, the plaintiff assigns his sole ground of error.

■ It has been definitely settled in this State, that to justify a recovery in an action by a guest against his host for injuries received in an automobile accident, the evidence must show that the host was guilty of gross negligence. A distinction between ordinary negligence and the gross negligence required in such case, has been repeatedly expressed in a number of Virginia cases. *Thomas* v. *Snow,* 162 Va. 654, 174 S. E. 837; *Drumwright* v. *Walker,* 167 Va. 307, 189 S. E. 310.

■ It is likewise equally well settled in this jurisdiction that when the evidence shows such a state of facts that reasonable men may differ as to whether or not there was gross negligence, the question becomes one for the jury, under proper instructions from the court. *Poole* v. *Kelley,* 162 Va. 279, 173 S. E. 537; *Yonkers* v. *Williams,* 169 Va. 294, 192 S. E. 753.

■■ Under these principles and the further principle, that a verdict set aside by the trial judge is not entitled to the same weight as one approved by him, we come to a consideration of the weight and sufficiency of the evidence to sustain the jury's verdict. If there is sufficient credible evidence to support and justify the verdict of the jury, notwithstanding a conflict with the defendant's evidence, the verdict must stand regardless of the fact that the trial judge, if sitting on the jury, would have reached a different conclusion in resolving the conflict in the evidence.

The record here presents the following evidence in favor of the plaintiff:

Watson and Coles were both young men, each about twenty-one years of age, close friends, residents of the city of Portsmouth, and had known each other most of their lives.

On the night of March 8, 1936, they went together to a dance in an automobile operated by Coles, and in which Watson was a guest. They attended this dance until it broke up about midnight. When they went out from the dance hall, the plaintiff had a personal difficulty with another boy or young man. While an altercation between the two was going on, a police officer came up and told Watson to leave, or he would arrest him for disorderly conduct. Both Watson and Coles obeyed the order and left, Watson re-entering the car operated by Coles. Instead of going home, the car was driven first on a State highway or boulevard towards Suffolk, and thence on a much narrower paved road. The latter road was rough and had many curves. Two State traffic police officers observed the high speed of the car on the boulevard, and one of them in a police car undertook to catch up with it to warn of its speed. This officer says as he pursued it, it was running between sixty-five and seventy miles an hour on the boulevard, and that after it got on the narrower road and was going around the curve upon which the accident happened, it was running from sixty to seventy miles an hour. The pursuing officer could not sound his police siren because it was broken, but he blew his ordinary horn, and that proving ineffective, he drove up against the rear of the defendant's car and "bumped" it several times as a means of notifying the driver to stop. The plaintiff and defendant both thought that the pursuing car might contain the young man with whom the difficulty had been had, and that he was following them to continue the altercation. Nevertheless, while the car was thus traveling rapidly and being "bumped" Watson requested Coles to stop the car, saying that he had rather get out, and have a fight than to take a chance of injury in a

wreck. Coles replied that he was going to keep on, and did so at a speed estimated by Watson at between fifty and sixty miles. While running at a speed, which Coles on the witness stand admitted he realized was reckless, and "really too fast on that road and vicinity," because of its rough condition and curves, the car left the road on a sharp curve and turned over, throwing the plaintiff through the right front window a distance of thirty feet from the car. The plaintiff, in an unconscious condition, was picked up by Coles and the police officer, who arrived immediately, and taken to a hospital. He sustained grave and serious hurts and injuries, his back being broken.

Although there was some evidence that the defendant was intoxicated at the time of the accident, both the plaintiff and defendant positively and flatly denied that either of them was drunk, or under the influence of intoxicants. This conflicting evidence was clearly brought out before the jury, and they resolved the conflict in favor of the plaintiff. The general reputation of the plaintiff for truth and veracity was shown to be very good.

Counsel for the defendant, in his brief, suggests fraud and collusion between his client and the plaintiff. Counsel for the defendant finds himself in an unusual position. He also represents an insurance company, which had issued a policy of indemnity insurance to the father of the defendant, as the owner of the car which was operated by the defendant at the time of the accident. The issuance of the insurance policy was not brought out in the evidence before the jury. Counsel contends that the defendant did not co-operate with him in making his defense, as required in the policy of insurance, and that the defendant testified falsely as to certain circumstances surrounding the accident, in that he had made to him and associate counsel, out of the presence of the court and jury, admissions that he had been drinking whiskey on the night in question, which he subsequently denied on the witness stand.

■■ This is not a suit between the plaintiff and an insurance carrier. Neither the duty of the defendant to the

insurance carrier, nor the liability of the insurance carrier to satisfy the judgment under question, is involved, or under review here. No evidence was introduced to contradict the defendant's positive denial that he made the alleged admission out of court. The question before the trial court and the jury was, whether under the law, the evidence and circumstances testified to in open court made out a case for the recovery of damages. The credibility of each witness, under familiar principles, is a question for the jury, when made an issue.

■■ The object and desire of this court is to arrive at substantial justice as closely as is humanly possible. The court is so inherently opposed to fraud and corruption, that it is keenly sensitive to every suggestion of wrongful collusion between parties. It cannot, however, in the absence of evidence or evidential circumstances, arbitrarily conclude, merely because an admission has been made by a defendant, in favor of a plaintiff, who may possibly profit thereby at the expense of some third party, that the plaintiff and defendant are in fraudulent and illegal agreement. There are times and occasions when a defendant should admit the truth of a plaintiff's allegations even though the former must pay the penalty therefor. There have been many cases in which courts and juries have refused to believe the defendant when he denied the allegations against him. While the admission of guilt may be unusual, it is not sufficient to establish fraud. We may assume that the unusual admission may be wholly true, in the absence of contradiction or incredibility.

Counsel for the defendant, in his brief, sets out four assignments of cross-error, but in his argument here, withdraws the assignment of cross-error relating to the instructions given by the court.

The first assignment of error is to the refusal of the trial court to quash the writ of *venire facias*, upon the ground that it was not drawn at least ten days before the commencement of the term of court at which he trial was had. The trial was held on November 11, 1936. The term

of that court began on October 26, 1936. The original *venire* shows on its face that it was drawn by the clerk of the court on October 21, 1936. There were other writs issued subsequent thereto for the same term of court.

In civil cases, Virginia Code, 1936, section 5992, directs that the clerk of the court, shall at least ten days before any term of such court, at which a jury may be necessary, to be designated by the judge of such court, proceed to draw the jury by lot, and that he shall forthwith issue a writ of *venire facias* to the proper officer requiring him to summon for service the persons thus drawn. The officer is required to summon such persons at least three days before the time of such attendance, and to make due return thereof at the opening of such court. This section further provides that if it be necessary to have a jury, at any time for which a jury has not been drawn and summoned, as above provided, and "if there be not then present any other regularly summoned jurors from whom such a jury may be selected," the court may require a jury to be drawn and summoned in the manner above directed.

Section 5999 also provides how, after a term commences, a sufficient number of jurors for service, may be obtained.

A careful reading of section 5992 discloses a clear distinction between drawing and summoning jurors. The fact that a judge has authority to order a jury to be drawn after the court convenes, and to fill vacancies, in the event of an insufficiency of jurors, shows that the time within which they are to be summoned is merely a matter of convenience both to the jurors and to the proper dispatch of business. The provision as to the time within which the jury shall be drawn is merely directory and not mandatory. It is simply a mode of procedure. *State* v. *Price*, 92 W. Va. 542, 115 S. E. 393.

Here the jury was selected by the proper officer, from the proper list, in the manner required by law, and the writ was duly executed by the proper officer. There was nothing done to the injury or prejudice of the defendant. He saw the list of jurors on the return day, as soon

as he was entitled to see the list, even if they had been summoned earlier. The extra time for the drawing of the jurors is for the convenience of the sheriff or other officer performing his duty, and for the convenience of the prospective jurors in arranging their private affairs to perform a public duty.

The point raised here bears no relation to the question raised in *Kennedy* v. *Commonwealth,* 168 Va. 721, 191 S. E. 634, with reference to empaneling a larger number of jurors than that required by law. There the right of the parties to exercise the challenges allowed by law was involved.

The trial court did not err in permitting the defendant to testify that he knew he was driving too fast for safety in view of the known conditions on the road being travelled. The admission of a defendant often furnishes the strongest and most convincing evidence of his guilt. If, in fact, it can be proven that a defendant realized or appreciated the reckless and dangerous nature of his acts at and before the time of the commission thereof, and continued to knowingly pursue such acts, his negligence becomes gross and wanton, if not actually wilful and culpable. No surer or better way of proving negligence has ever been found than the admission of the offender.

The last assignment of cross-error relates to the alleged misconduct of a juror. Upon the motion to set aside the verdict, counsel for the defendant introduced evidence to show that one of the jurors had failed to disclose that he had been informed there was indemnity insurance covering the operator of the automobile in question, and that he was interested in the defendant, and thereby his verdict was influenced.

It appears that this juror was an employee in a store of a company which also employed the father of the defendant in another store. Although he had seen the defendant once or twice, he did not recognize him until he heard in court that his name was Coles. This juror had heard it stated on the morning of the day of the trial, that some insurance was involved in this case, but he did not

know the case was coming up that day. When the jury had returned to its room to consider its verdict, another juror brought up the question of insurance. The juror whose conduct is under consideration, said he there stated that insurance had nothing to do with the case, and that he paid no attention to it, and considered only the question of the gross negligence of the defendant. Other jurors said that when the question of insurance came up in their deliberations, none of them knew whether there was any coverage on the particular car involved. They talked about insurance coverage and the usual limit for same, and wondered whether or not the amount of damages they had agreed on could ever be paid without insurance. But each of them specifically stated that the question of insurance did not influence them in arriving at their verdict.

While it is greatly to be desired that the question of insurance should not arise, or be discussed, in arriving at a verdict in this type of case, it is beyond the reach of the imagination to expect in this day and time, when insurance plays so important a part in the protection of those who operate automobiles, that men possessing the capacity of intelligence of average jurors, should not either speculate or turn their minds to the thought of the possibility of the owner or operator of an automobile having exercised precaution and prudence to secure a recognized and approved financial protection.

The evidence does not indicate other than a mere possibility of insurance coverage in this case. The verdict does not appear to have been influenced thereby, nor does there appear any reason why the now challenged juror should have been influenced against the defendant merely because he knew the defendant and his father who worked for the same company as himself.

The effort to impeach their own verdict by the testimony of jurors is not received with favor in Virginia, except to prevent a failure of justice. There is nothing in this case to place it in the exception to that safe and salutary rule. *Culpepper* v. *Robie*, 155 Va. 64, 91, 154 S. E. 687.

██ In the record before us, which is all that we can consider, the evidence amply justifies the verdict of the jury. The case is unusual, as we have said, in that the defendant admits gross negligence. There is no recorded denial or contradiction. We cannot arbitrarily indulge in speculation or in theories, which may or may not be fanciful. We cannot read the mind of the defendant. If he has been honest and truthful, he is not subject to criticism for his testimony.

If a defendant is guilty of gross negligence, and admits his guilt, such admission should not penalize a plaintiff. It merely removes what might otherwise be conflicting evidence, and relieves the plaintiff of the hardship of furnishing proof. The verdicts of juries and the judgments of courts frequently indicate that an admission of guilt might well have been made in the interest of a speedier justice.

The judgment of the trial court in setting aside the verdict of the jury is reversed, the verdict of the jury is reinstated and this court will here enter judgment for the plaintiff accordingly.

*Reversed.*