442

LUCIAN Y. GROVE, THOMAS N. CONNORS, GEORGE M.
HARVEY AND JET-A-WAY CORPORATION

V.

VIKING JAW, INC.

Record No. 860434

March 3, 1989

Present: All the Justices

*John L. Walker, Jr. (Richard E.B. Foster; Woods, Rogers & Hazlegrove; Fox, Wooten & Hart, P.C.*, on briefs), for appellants.
*Charles H. Osterhoudt (Edward A. Natt; Osterhoudt, Ferguson, Natt, Aheron & Agee, P.C.*, on brief), for appellee.

LACY, J., delivered the opinion of the Court.

In this appeal we are asked to resolve two issues. The first is whether financial documents proffered by an independent accounting firm constituted performance of contractual terms deemed to be clear and unambiguous by the parties and the trial court. We must also determine whether a new trial should be granted as a result of a misdirection given by the jury foreman to the jury.

### Compliance with the Agreement of Sale.

On April 5, 1983, appellants Lucian Y. Grove, Thomas N. Conners, George M. Harvey, and Jet-A-Way Corporation (Jet-A-Way) executed an agreement with appellee Viking Jaw, Inc. (VJAW), to purchase VJAW's assets. The purchase price was $1.4 million, which, pursuant to the agreement, was to be adjusted up or down based on a comparison of asset values on December 31, 1982, with those on April 30, 1983.

The accounting firm of Peat, Marwick, Mitchell & Co. (Peat, Marwick), wrote letters on April 25 and June 15, 1983, in which they listed the book value of VJAW on December 31, 1982, and April 30, 1983, respectively. Those figures showed that VJAW's book value had increased from December to April. In October 1983, Peat, Marwick issued a revised balance sheet setting the increase in asset value at $211,165. VJAW requested Jet-A-Way to pay $211,165, the balance due on the purchase price. Jet-A-Way refused.

VJAW initiated this action, claiming that Jet-A-Way's refusal to pay constituted a breach of contract. Jet-A-Way filed its grounds of defense and counterclaimed for damages, alleging fraud by VJAW in the performance of the agreement. The case was tried to a jury which returned a $211,165 verdict in favor of VJAW. The trial court denied Jet-A-Way's motion to set aside the verdict and entered judgment on the verdict.

The controversy exists over whether financial documents submitted by Peat, Marwick in October 1983, satisfy the provisions of Paragraphs 3 and 5 of the agreement of sale.

Those provisions read in pertinent part:

3. The purchase price to be paid by Purchaser to Seller . . . is One Million, Four Hundred Thousand Dollars ($1,400,000.00), which sum shall be increased or decreased, as appropriate, by the increased or decreased difference between the book value of those assets of Seller being sold to Purchaser as reflected on Seller's December 31, 1982 *balance sheet, prepared, or to be prepared by, Peat, Marwick, Mitchell & Co. and the book value of those assets of Seller as reflected on its April 30, 1983 balance sheet, to be prepared by Peat, Marwick, Mitchell & Co.*

. . . .

5. The actual purchase price depends upon actual values as indicated *on the balance sheets of Seller* as of December 31, 1982 and April 30, 1983, *as prepared, or to be prepared, by Peat, Marwick, Mitchell & Co. in accordance with generally accepted accounting principles consistently applied.* On the date of closing, Purchaser and Seller shall participate in the taking of an inventory of the assets being sold by Seller to Purchaser, such participation to be at each party's own cost.

(Emphasis added).

VJAW sought to introduce parol evidence on the intention of the parties with respect to the meaning of Paragraphs 3 and 5, specifically the passages emphasized above. The trial court would not permit the parol evidence, holding as a matter of law that the agreement was clear and unambiguous. VJAW objected to the court's ruling but did not assign cross-error to the ruling on ap-

peal. The issues of contract ambiguity and the intention of the parties, therefore, are not before us. Rule 5:25.

Jet-A-Way contends that the agreement entitled it to a level of documentation that would allow a certified public accountant to attest that the balance sheets were "prepared . . . in accordance with generally accepted accounting principles consistently applied." Such a declaration, they assert, could be made only if an audit was conducted. It is undisputed that Peat, Marwick did not conduct an audit; rather, it prepared balance sheets based upon information provided by VJAW. Therefore, Jet-A-Way contends, the financial documents presented could not comply with the terms of the agreement as a matter of law.

Four witnesses were qualified as accounting experts. These experts were not allowed to testify regarding what the agreement meant. Instead, each expert gave his description of what would be required to "prepare balance sheets in accordance with generally accepted accounting principles consistently applied." Additionally, the trial court allowed the experts to indicate whether, in their opinion, the documents presented by Peat, Marwick constituted performance under the agreement.

VJAW qualified Billy B. Vincent, the Peat, Marwick representative who was in charge of the VJAW account. Vincent testified that he could not state he had "prepared those financial statements in accordance with the generally accepted accounting principles consistently applied." Yet, he also testified that the financial statements complied with the agreement.

Jet-A-Way qualified three experts. Pendleton W. Smith testified that generally accepted *auditing* standards had not been applied but he could not testify that generally accepted *accounting principles* had not been applied. Andrew J. Gordon testified that the word "prepared" usually means taking information from the records and putting it together in a format. In his opinion, the word did not mean that the information had been examined or tested for its actual validity, and it is not a term accountants normally would use to create a balance sheet.

Jet-A-Way's third expert, James F. McNabb, was also its Treasurer and a member of Jet-A-Way's Board of Directors. He testified that an audit would be required to determine whether generally accepted accounting principles were used in creating the balance sheets.

The experts disagreed as to whether the documents submitted constituted performance under the agreement, offered different interpretations of the word "prepare," and expressed different opinions as to whether VJAW's assets could be presented showing "actual values as indicated on the balance sheets . . . in accordance with generally accepted accounting principles consistently applied." The jury heard the testimony and subsequently determined that the disputed financial documents presented did in fact constitute compliance under the agreement.

We do not agree with Jet-A-Way's contention that the financial documents, as a matter of law, fail to comply with the agreement. This is a classic case of disagreement over whether a party's performance constituted compliance with a contract. Inclusion of professional terms of art over which the experts disagree does not change the nature of the case. The jury is charged with determining whether the contract was performed or breached based on the evidence presented, including conflicting expert opinion on what constitutes performance. *See Combs* v. *Dickenson-Wise Medical Group*, 233 Va. 177, 184-85, 355 S.E.2d 553, 557 (1987) (quoting *Camp* v. *Wilson*, 97 Va. 265, 270, 33 S.E. 591, 592 (1899)). We hold that the trial court did not err in submitting the question of contract compliance to the jury.

### Misdirection to the Jury.

During their deliberations, the jury panel questioned whether a verdict could be returned awarding damages to both parties. The question was taken to the judge by the foreman alone. After argument by counsel, the court instructed the foreman that the question could not be answered and that the jury would have to rely on the court's written instructions as given.

After the jury announced its verdict for plaintiff, the foreman advised the trial court that she had told the other members of the jury that they could not award damages to both parties. This statement clearly was not an accurate reflection of the court's directive. The court relayed this information to counsel and, after argument, denied Jet-A-Way's motion for a new trial based on the misdirection by the jury foreman.

The procedure of responding to jury inquiries through the foreman alone inherently carries the possibility that the foreman's verbal instructions to the rest of the panel are subject to the interpretation of the foreman or other innocent mistakes of com-

munication. In this case, however, counsel raised no objection to the procedure used.

■ Impeachment of a jury verdict is a step taken only in the most extreme circumstances. *See, e.g., Phillips v. Campbell*, 200 Va. 136, 140-41, 104 S.E.2d 765, 768 (1958); *Fuller v. Commonwealth*, 190 Va. 19, 28-29, 55 S.E.2d 430, 435-36 (1949); *Watson v. Coles*, 170 Va. 141, 151, 195 S.E. 506, 510 (1938). While instructions should be given to the jury as a whole, rather than to individual jurors, the impact in this case was insufficient to cause a failure of justice. Furthermore, Jet-A-Way argued to the trial judge that he should answer the panel's question in the negative; *i.e.*, that damages could only be awarded to one party, not both. It is precisely this instruction that the foreman delivered to the panel members. Because the verdict went against Jet-A-Way, they cannot now seriously contend that a verdict rendered on their theory has caused them to suffer a failure of justice. Under these circumstances we hold that the trial court did not err in refusing to grant a mistrial.

Finding no reversible error, we will affirm the judgment of the trial court.

*Affirmed.*