# Richmond

## H. Mountjoy and A. B. Cauley, Jr. v. Bernice Powell Burton, Adm'x, etc.

January 13, 1947.

Record No. 3145.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*C. O'Conor Goolrick* and *F. P. Moncure*, for the plaintiffs in error.

*William W. Butzner, John D. Butzner, Jr.* and *DuVal Q. Hicks, Jr.*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Bernice Powell Burton, administratrix of James William Burton, deceased, instituted an action at law against Howard Mountjoy and A. B. Cauley, Jr., for damages for the wrongful death of her decedent. A verdict was rendered in her favor of $5,000, and judgment pronounced thereon.

This action was one in which the host was being sued by the personal representative of the guest, the latter having been killed as a result of a collision between an automobile and a Greyhound bus.

Mountjoy was the owner and operator of a taxi business at Triangle, Virginia, which is just a short distance from Quantico. Cauley, the other defendant, was the driver of the car upon this occasion. He was and had been a taxi driver but at this time he was not so employed.

On May 8, 1945, Mrs. Mountjoy and Mrs. Creel, a friend, decided to go to Fredericksburg to make some purchases. They intended going in one of Mountjoy's taxis and Mrs. Mountjoy had intended driving. The taxi was a seven-passenger Dodge limousine. Just before Mrs. Mountjoy started, Cauley and Burton, who also were going to Fredericksburg, requested and were given permission by Mr. Mountjoy to ride to Fredericksburg in the car. This arrangement having been completed, Mrs. Mountjoy who had expected to drive, requested Cauley to drive. He took the wheel and Burton sat on the front seat with him. The two ladies sat on the rear seat. By the time they had reached Stafford Court House, a mile north of the scene of the accident, it had begun to rain. As they proceeded and were ascending a long hill, driving in the south-bound lane on Highway No. 1, the car skidded from the extreme right-hand side of that lane diagonally across this four lane highway, to the extreme east side thereof and collided with the right front side of a Greyhound bus which was going in the opposite direction toward Washington. Cauley was badly injured but recovered. Burton, Mrs. Mountjoy, and Mrs. Creel were killed.

The writ of error which is now under review is within a very narrow scope. It is familiar law in these cases that before a guest may recover damages against his host for injuries he must prove that the host was guilty of gross negligence. The plaintiff in error contends very earnestly that there was no evidence of gross negligence shown in this case, and therefore that the issue should not have been submitted to the jury. This is the determinative question in the case.

Highway No. 1, between Washington and Fredericksburg, has four lanes—two for north-bound traffic and two for south-bound traffic. It is a much traveled highway. At and near the point of accident it becomes slippery when wet. It is practically straight for a long distance, perhaps a quarter to a half mile.

The collision occurred at 8:30 A. M. After the collision the Greyhound bus came to rest on its extreme right-hand side. The taxi, which was almost completely demolished, came to rest at the rear of the bus on the extreme east side of the north-bound traffic lane.

A week before the accident the taxi had been placed in a garage for the purpose of repairing its front end. After the repair work was completed the car was again placed in taxi service in and around Quantico, Alexandria, and Washington. It was driven in taxi service over 800 miles in three days prior to the accident. On the morning of May 8, just before the fatal trip, the smooth front tires were replaced with new synthetic tires. They were mounted by Cauley and Burton. The two rear tires had worn smooth. Before starting Mountjoy gave directions that upon arrival at Fredericksburg the car should be taken to a garage. He stated upon the witness stand that his purpose was to ascertain whether or not the synthetic tires needed balancing, and if so, that he wanted them balanced.

Later in the day on which the accident occurred he made certain statements to the mother and widow of Burton to the effect that he had directed that the car be taken to the garage in Fredericksburg to have the wheels lined up.

The trial court in its opinion regarding the evidence tending to show the defects in the car had this to say:

"The jury could have found from the evidence that the front wheels of the taxi were out of line. The defendant Mountjoy told Mrs. Burton a few hours after the collision that he had sent the car to Fredericksburg to 'have the wheels lined up'. Moreover, the police officer Swann testified that Cauley had testified at his preliminary hearing that he was taking the taxi 'to Fredericksburg to have the steering gear repaired'. Cauley denied having made such a statement. * * *

"The plaintiff's witness O'Toole testified, 'A high rate of speed, tire unbalanced, or assembly out of balance, will set up a shimmy and throw the car out of control'.

"From all of this the jury could have found that there was something wrong with the front mechanism of the taxi on the day in question, and that great care was required in the operation of the same."

We think the conclusion of the trial court is supported by the evidence.

The plaintiff founded her case upon the testimony pertaining to the defects in the car known to the defendants which made it dangerous to operate it at high speed, and the testimony and physical facts which denoted the high speed of operation immediately before the collision,—one witness having estimated the speed at 80 miles per hour. The car was old from use and the rear tires were worn smooth.

The defendants, on the other hand, contended that they were free of any gross negligence and founded their contention on the testimony of the defendant, Cauley, who stated that he was driving at the time 35 miles per hour; that there were no defects in the car, but for some unknown and unexplained reason the car went into a skid and skidded entirely across the road in front of the approaching bus.

These respective positions were submitted to the jury under proper instructions. They were very clearly told that the mere skidding across a slippery road was not in itself sufficient upon which to base a recovery. They were

also told that if the death of the plaintiff's intestate resulted solely from the condition of the road and it was the sole cause of the skidding there coud be no recovery.

■ By way of summary, the jury could have found from the evidence that the car was greatly worn with use; that the rear tires were worn and without tread; that the road was wet and slippery; that there was a defect in the front end of the car which rendered it dangerous to drive it at a high rate of speed; that it was being driven at a high rate of speed immediately before the collision, and that the defendants knew of all these conditions. These things made the issue of whether or not the defendants were guilty of gross negligence upon this occasion one for the jury.

The judgment is affirmed.

*Affirmed.*

HUDGINS, J., dissenting.

I think the judgment of the trial court should be reversed because plaintiffs' evidence is insufficient to convict defendants of gross negligence.