# Richmond

AUDREY HOLT AUSTIN, ADM'X, ETC. v. HERMAN
LAWRENCE AUSTIN.

June 9, 1947.

Record No. 3188.

Present, All the Justices.

The opinion states the case.

*Thomas A. Williams* and *A. Clair Sager*, for the plaintiff
in error.

*J. B. Browder*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error, who was the plaintiff in the trial court, instituted her action against Herman Lawrence Austin for damages for the wrongful death of her intestate who was her husband. The deceased and the defendant were brothers. After all of the evidence had been introduced the trial court struck it as being insufficient to support a finding of gross negligence against the defendant. Thereafter the jury rendered its verdict in favor of the defendant.

The notice of motion for judgment charged the defendant with operating an automobile, in which the plaintiff's decedent was a guest, in a grossly careless and reckless manner, at a dangerous, excessive and unlawful speed, and with passing other vehicles going in the same direction on an upgrade while unable to see vehicles approaching from the opposite direction; that while driving on his left-hand side of the highway and while passing vehicles going in the same direction another vehicle suddenly appeared from over the hill approaching from the opposite direction; that in order to avoid a collision with the approaching vehicle he suddenly swerved the automobile in which the plaintiff's decedent was riding to the right, lost control of it, and it struck a tree, causing it to turn over several times, and resulting in the death of the plaintiff's decedent.

In the petition for the writ of error there is no statement of the facts as is required by our rule. See Rule of Court 14(c).

The preponderance of the evidence discloses that the defendant had borrowed an automobile from another brother and he and the plaintiff's decedent went for a ride. They carried the wife of the deceased and two of their nephews to Richmond and later returned to Highland Springs. The plaintiff's decedent drove part of the way. Later they were

joined by two other men who were in the automobile at the time of the accident, which occurred on December 22, 1945, at around 10:45 or 11:00 p. m.

The accident occurred on what is known as the Nine-Mile road, sometimes spoken of as Seven Pines highway, which runs between Highland Springs and Richmond. The scene of the accident was just east of Gaulding's store. A few days before there had been a snow which was still upon the ground but the hard-surfaced highway had been scraped and cleared of snow for several days and was dry at the time of the accident. The hard-surfaced portion of the roadway was some 22 feet in width, and proceeding in the direction of Richmond the highway descends on a slight downgrade to a slight curve which bears to the left, and then proceeds upgrade a distance estimated to be about two and one-half city blocks, or more than 600 feet, to Gaulding's store, which is located at the crest of the incline. For this latter distance the road is straight and is separated by a broken white line. The upgrade is described as "very slight". There were no road markers and there was no double white line to indicate that vehicles going in the same direction should not be passed at the point in question. There was nothing to obstruct the vision of the defendant in passing the vehicles going in the same direction. The crest of the hill was some 600 feet away. The reflection of the headlights of an approaching automobile from the opposite direction could have been seen for six or eight blocks.

There is some immaterial conflict in the evidence as to the speed at which the defendant was driving. One witness at first testified that he was going 60 miles per hour. On cross-examination he modified this statement and said that he was going at least 50 miles an hour or more. At the time of the accident the speed limit at this particular point was 50 miles per hour. Other witnesses testified that he was not going that fast. The defendant himself testified that he was proceeding at from 40 to 45 miles per hour.

In proceeding downgrade to the curve at the bottom of

the small hill there were two vehicles ahead of the defendant's automobile. The one next to his automobile was a bus and just in front of the bus was an automobile operated by a Mr. Timberlake. The defendant passed the bus on the downgrade and just after reaching the curve at the bottom of the hill he passed the Timberlake car, according to Timberlake, from 450 to 600 feet below the crest of the slight upgrade. After passing the Timberlake car and reaching some 120 feet ahead of it the defendant's car suddenly swerved to the right across the road into a ditch at an angle estimated at 90 degrees, turning over several times, finally coming to rest against some trees. The approaching car from the opposite direction was not close enough to have caused any danger to the defendant in passing the Timberlake car. At the time of this passing the approaching car was more than 450 feet away. As a matter of fact it was brought to a stop at a point before it reached the overturned car of the defendant.

At the time the defendant drove past the Timberlake car it was moving at the rate of 25 miles an hour and, according to practically all of the evidence, he had plenty of time to pass that car and return to his side of the road before the oncoming approaching car would have reached him. This oncoming car was traveling at some 40 miles per hour. Mr. Horace Henshaw, a police officer for the county of Henrico, a witness for the plaintiff, reached the scene of accident about five minutes after it occurred and made an investigation of the physical facts. He testified specifically that upon the portion of the highway over which the defendant's car was driven there was a partially invisible skim of ice that had been caused by the melting snow on the side of the road, the water from which had run across the road and frozen. He said that this ice was of such color that it could not be seen or identified by a person driving along the road. He also testified that the skid marks made by the defendant's car began at the point where this ice was located and continued across the road and into the ditch. This evidence of the

police officer is not materially contradicted. It is true the driver of the bus testified that there was no ice on the road, but he had not made an inspection of the roadway other than to see it as he drove over it, and evidently he could not see this patch of ice from his bus. This ice spot is the only apparent reason disclosed by the evidence as to why the defendant lost control of his automobile. All of the evidence tends to show that the approaching car from the opposite direction was not the cause of the accident.

The plaintiff's theory of the case was that the defendant, in passing the Timberlake car, passed it on an upgrade when his vision of the approaching traffic was obscured by the crest of the grade; and that when the car coming from the opposite direction suddenly appeared before him, he had to make a sharp turn to the right, and in doing this lost control of the car. But this theory of the case is not supported by any evidence.

Counsel for the plaintiff also relies upon several alleged acts of simple negligence on the part of the defendant which he combines and, upon the whole, charges him with gross negligence, thus bringing the case within the control of *Drumwright* v. *Walker*, 167 Va. 307, 189 S. E. 310, and *Masters* v. *Cardi*, *ante*, p. 261, 42 S. E. (2d) 203. It is clear that the principle of those cases has no application here.

The preponderance of the evidence fails to sustain any act of gross negligence on the part of the defendant. It does not disclose that he was exceeding the lawful speed limit. His speed was not established at more than 50 miles per hour. It is true, as already stated, the bus driver at first said he was going at 60 miles per hour when he passed the bus which was four to six hundred feet before the point of accident was reached. However, on cross-examination, he reduced his estimate to 50 miles or more per hour. Other witnesses who were in better position to testify on the subject did not say that he was going more than 50 miles per hour which was the lawful limit at that time.

At the risk of repetition we emphasize these considerations: The highway department had marked the center of the road

with a white broken line indicating it as safe to pass vehicles going in the same direction. If it had not been safe for that purpose at that point, it is likely there would have been double white broken lines to indicate danger to those seeking to pass other vehicles proceeding in the same direction. In any event, there is no evidence that the oncoming vehicle was the cause of the accident. It never created a danger so far as the defendant was concerned. In fact it never reached him. There is no evidence of the defendant's recklessness or that he utterly disregarded prudence or grossly neglected the safety of others. The only probable cause of the accident, as shown by the evidence, was the skidding on the invisible ice which caused the defendant to lose control of his car.

The allegations of the notice of motion were not sustained by the proof, and the court was justified in striking the evidence. We reiterate what Mr. Justice Hudgins said in speaking for the court in *Hill* v. *Bradley, post,* p. 394, 43 S. E. (2d) 29, "The plaintiff has failed to establish by a preponderance of the evidence that defendant operated his automobile in such manner as to show an utter disregard of prudence amounting to complete neglect of the safety of his guest. *Keen* v. *Harman, supra.*" (183 Va. 670, 33 S. E. (2d) 197.)

The judgment is affirmed.

*Affirmed.*