# Richmond

BETTY JEAN VIA v. B. I. BADANES, ET ALS.

March 7, 1949.

Record No. 3455.

Present, All the Justices.

The opinion states the case.

*James H. Simmonds* and *George A. Glasgow*, for the plaintiff in error.

*Frank L. Ball, Gardner L. Boothe* and *Robert A. Ryland*, for the defendants in error.

Hudgins, C. J., delivered the opinion of the court.

Betty Jean Via, a guest in a Ford sedan driven by Victor Parker, was injured in a collision between the sedan and a Ford truck driven by George E. Bufano. The evidence she introduced in an action to recover damages for personal injuries against the drivers of the vehicles and their respective owners, was, on motion of defendants, stricken from consideration of the jury.

Plaintiff concedes that her evidence is not sufficient to prove that Victor Parker, the driver, was acting as the servant or agent of Frank Parker, the owner of the sedan, and hence made no assignment of error as to the action of the court in dismissing Frank Parker as a party defendant. She charges

Victor Parker with gross negligence and George E. Bufano and B. I. Badanes, his principal, with simple or ordinary negligence. The only question presented is whether her evidence was sufficient to submit the issue of such negligence of either, or both, drivers to the jury.

At approximately 1:15 a. m. on February 9, 1947, Parker left the Pennsylvania Central Airlines Club, driving a Ford sedan. He had three passengers in the car—Ruth E. Perry, who was seated to his right on the front seat; Betty Jean Via, the plaintiff, and her husband, who were sitting on the back seat. The plaintiff was leaning over in the lap of her husband of three weeks, with her arms around him and facing the rear. Parker had driven in a northerly direction along the Mount Vernon Memorial Boulevard approximately three-fourths of a mile, when the sedan collided with the truck which was being driven in an opposite direction by George E. Bufano.

There were four persons riding in the cab of the truck. Miss Francis Midkiff was to the right of the driver, James I. Gardner to her right, with Miss Bernadine Reeves in his lap. Another passenger was seated on a box in the body of the truck. Several occupants of the vehicles, including the plaintiff, were severely injured, and the front of each vehicle was badly smashed.

The boulevard, at the scene of the wreck, is about level, straight and forty feet wide, divided into four traffic lanes, with a black mark six inches wide down the center. The center of neither the two north-bound nor the two south-bound traffic lanes is indicated by a white or black line, but this center is evidenced by a groove or slight depression made in the hard surface when it was constructed of concrete, poured in sections ten feet wide.

Two United States park police officers reached the scene a few minutes after the collision, but testified that they could not form an opinion from the physical facts as to which vehicle had crossed the center line, because * * * "both cars were locked together on the center line of the road. There was not anything which would indicate to us which

operator was at fault." They further stated that "it appeared the left front wheel of the truck collided with the left front wheel of the passenger car."

Only three eye-witnesses to the collision were called—the drivers of the two vehicles, who were examined as adverse witnesses, and Ruth Perry.

Parker, plaintiff's host, testified that he was driving north in the passing lane for north-bound cars, at a moderate rate of speed—35 to 40 miles per hour. He was not trying to pass a car in front of him, but was driving in the passing lane because ice and snow extended several feet from the right hand side of the boulevard into the right-hand traffic lane which made it slick and slippery. He saw the lights of only one car approaching, but paid no particular attention to them until the vehicle was within forty or forty-five feet of him. He continued straight ahead in the north-bound passing traffic lane and did not turn to his left across the center line. The night was clear, his lights were burning and he could see ahead for a distance equal to the length of several city blocks. The only vehicle he saw approaching from the opposite direction was the truck and he did not know whether or not it was driven across the center line in front of him.

The driver of the truck testified that he was driving at approximately 35 miles an hour south in the extreme right traffic lane when he overtook another car traveling "pretty slow;" he pulled to the left into the other south-bound traffic lane with the intention of passing. He had straightened out in the passing lane and had driven 75 to 100 feet before the collision. He did not see the lights of any north-bound car approaching until the sedan was "a foot or two in front of me." At that time he was about 5 feet behind the car he was attempting to pass. He was positive that he stayed to his right of the center line of the boulevard and never crossed it. The night was clear, his truck had been recently inspected, his lights were shining, and he could see "approximately two or three city blocks in front" of him.

The photographs of the vehicles taken by the two policemen after the collision and before the cars were moved, show that the left rear tire of the truck was flat. However, Bufano testified that the tire did not become deflated until after the impact.

If the statements of the two drivers to the effect that neither vehicle crossed the center of the boulevard be true, then the only inferences to be drawn therefrom is that each vehicle was being driven so close to the center of the boulevard that neither could pass the other in safety. Both admit, and the physical facts established, that there was a head-on collision between the two vehicles, which, under the circumstances, could not have occurred unless one or both of the drivers were guilty of negligence.

The only other eye-witness who testified was Ruth Perry. She said that a few moments before the accident she was leaning over taking off her shoes as her feet were cold and she intended to sit on them to get them warm. When she straightened up from this stooped position she saw the lights of the truck which "seemed to be coming right toward our car" and the car she was in "was going straight to it." She realized that danger of a head-on collision was imminent, and hollered to Victor Parker "to lookout." The crash followed immediately. She thought Parker was driving on his side of the center of the highway.

While plaintiff violated no duty she owed for the safety of herself or others, nevertheless, in order to recover compensation, she must carry the burden of proving that the injuries she sustained, were the direct result of the negligence of one or both drivers who owed her the duty of exercising proper care for her safety. The testimony, when considered with the physical facts, makes out a *prima facie* case, and the issues of negligence should have been submitted to the jury.

Bufano, on a straight, level highway, forty feet wide, turned out of one traffic lane into another to pass a car traveling in the same direction. If, at the time, he had kept a proper lookout he would have seen the sedan approaching

from the opposite direction traveling on or near the center of the highway. He had the right to assume that the driver of the sedan would keep to the right of the center, but he knew, or should have known, from the position of the sedan and the car in front of him that the movement of the cars would create a narrow passage between the car in front of him and the sedan if he continued in his attempt to pass at that particular moment. He says that he had completed his turn and had "straightened out" in the left south-bound traffic lane 100 feet before the collision. As the sedan and truck were traveling at approximately the same rate of speed, the sedan was then 100 feet south of the point of impact or 200 feet from the truck, with its headlights on and burning.

The situation required him to be on the alert, to have his truck under control to prevent it from colliding with either the north-bound sedan or the other south-bound vehicle, and, if necessary, to reduce his speed and turn to his right from the center line, on or near which the physical facts show that he was traveling. He did neither. His only excuse for his inaction was that he did not see the lights of the sedan. He was asked:

"Q. Did you see the car at all before it hit you?
"A. I saw the flash of lights at the moment I hit. * * *
"Q. The road was clear straight ahead, wasn't it?
"A. Clear straight ahead, yes, sir. There is a slight downgrade, but I could see approximately two or three blocks in front of me.
"Q. But you didn't see him coming?
"A. No, sir."

This witness does not deny what other witnesses affirm that the headlights on the sedan were burning and that it was approaching at 35 to 40 miles an hour. Under these circumstances, the testimony of Bufano himself is an admission that he did not maintain a lookout.

On cross-examination, he was asked:

"Q. Do I understand you to say you did not even see the lights of it until it was within a foot of you?

"A. I did not notice it.

"Q. Where were you looking?

"A. Straight ahead."

The duty to keep a lookout requires not only the physical act of looking, but reasonably prudent action to avoid the danger which an effective lookout would disclose. *Penoso v. D. Pender Grocery Co.*, 177 Va. 245, 13 S. E. (2d) 310.

As Mr. Justice Spratley, in *Yellow Cab Co. v. Eden*, 178 Va. 325, 341, 16 S. E. (2d) 625, said:

"The driver of a car who keeps a lookout and fails to take advantage of what it discloses is as guilty of negligence as one who fails to keep a lookout. The result is usually the same."

If Bufano did not maintain a proper lookout, under the circumstances, he is guilty of negligence. If he did maintain a lookout and did not see what was obvious in time to take precautions to avoid imminent danger, he is just as guilty of negligence as if he had failed to maintain a lookout. Failure to keep a proper lookout is negligence; likewise driving in the center of the highway when there is approaching traffic is negligence. *Whipple v. Booth*, 155 Va. 413, 154 S. E. 545.

Parker stated that he was using the passing lane not because he was overtaking a north-bound vehicle, but because there was some ice and snow extending two to three feet on the hard surface from the right, or the eastern, side of the boulevard. The condition of the surface and the fact that Parker was deliberately driving near the center of the boulevard, imposed a duty upon him to exercise more than normal vigilance to observe the movement of south-bound vehicles. If he had exercised such vigilance, he would have seen the lights of two south-bound vehicles approaching several hundred yards away; he would have seen the lights of the rear vehicle as it turned toward the center of the boulevard in ample time to have turned his vehicle to the right, for which movement he had ample unobstructed space.

If he had seen the movement of the truck and continued in the course he said he was driving the collision would have occurred and he would have been guilty of wilful or wanton negligence. He should not be allowed to escape liability because he did not see what he would have seen had he been exercising that degree of care the law imposed upon him.

There are some similarities and marked differences between the evidence in this case and the evidence in *Smith* v. *Turner*, 178 Va. 172, 16 S. E. (2d) 370, 136 A. L. R. 1251, cited in both briefs. The distinguishing features are obvious. There an administrator brought an action for wrongful death against Mrs. Smith, his decedent's host, and against Mrs. Turner, the owners of the two cars involved in a head-on collision. The jury returned a verdict acquitting Mrs. Smith of gross negligence and Mrs. Turner of simple negligence, on which verdict the trial court entered judgment for defendants. On review by this court, the judgment was reversed and a new trial awarded the plaintiff against both defendants. The collision occurred in the daytime, about noon, on a highway 18 feet wide, which, at the point of the accident, was straight, about level, and devoid of other traffic, and where each driver's view was unobstructed for a distance of several hundred yards. Notwithstanding this situation, there was a terrific collision between the two cars. The right front of one struck the right front of the other, indicating "that one or both of the cars had been driven on the wrong side of the road." The exact point of collision was in dispute. The physical facts, as detailed by the witnesses, failed to settle this issue. The testimony of Mrs. Smith and her witnesses exonerated her from all negligence, simple as well as gross, and placed the entire responsibility for the collision upon the driver of the Turner car. The testimony of Mrs. Turner and her witnesses exonerated the driver of her car of all negligence and tended to prove that Mrs. Smith was guilty of gross, if not wanton negligence. It was held that there was no evidence to support the verdict acquitting both defendants of negligence. Mr.

Justice Eggleston, who delivered the opinion for the court, speaking to this point, said:

"Manifestly these two conflicting stories cannot be reconciled or compromised. Under neither aspect of the case should there have been a verdict which excused both of the defendants. While the jury is the judge of disputed facts, its verdict must be predicated on the evidence adduced before it.

"To accept the Turner version of the accident is to acquit the driver of that car of fault and to convict Mrs. Smith of gross negligence, not simple or ordinary negligence. To absolve Mrs. Smith from liability is to say that the accident was due to the negligence of the driver of the Turner car. Plainly we think under the evidence before us the plaintiff was entitled to recover of one of the defendants, if not of both."

In discussing the question of gross negligence, it was stated:

"Whether the conduct of an automobile driver under given circumstances constitutes gross negligence is generally a question of fact for the jury. But where fair-minded men cannot differ as to the conclusion, it becomes a question of law for the court. Cases in which we have so held are collected by Mr. Justice Holt in *Carroll* v. *Miller*, 175 Va. 388, 9 S. E. (2d) 322."

[6] The dividing line between simple and gross negligence cannot be defined with sufficient accuracy to be applicable to all cases. Gross negligence "does not possess the exactness of mathematical demonstration." *Altman* v. *Aronson*, 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185; *Thornhill* v. *Thornhill*, 172 Va. 553, 2 S. E. (2d) 318.

"The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions

from the court." *Boggs* v. *Plybon,* 157 Va. 30, 38, 160 S. E. 77. See *Twyman* v. *Adkins,* 168 Va. 456, 191 S. E. 615; *Chappell* v. *White,* 184 Va. 810, 36 S. E. (2d) 524; *Lipscomb* v. *O'Brien,* 181 Va. 471, 25 S. E. (2d) 261; *Hill* v. *Bradley,* 186 Va. 394, 43 S. E. (2d) 29; *Mountjoy* v. *Burton,* 185 Va. 936, 40 S. E. (2d) 803; *Austin* v. *Austin,* 186 Va. 382, 43 S. E. (2d) 31; *Chappell* v. *White,* 182 Va. 625, 29 S. E. (2d) 858; *Howe* v. *Jones,* 162 Va. 442, 174 S. E. 764; *Thomas* v. *Snow,* 162 Va. 654, 174 S. E. 837; *Wright* v. *Osborne,* 175 Va. 442, 9 S. E. (2d) 452; *Brown* v. *Branch,* 175 Va. 382, 9 S. E. (2d) 285; *Drumwright* v. *Walker,* 167 Va. 307, 189 S. E. 310; *Toler* v. *Yellow Cab Co.,* 179 Va. 38, 18 S. E. (2d) 250.

We have defined gross negligence to be that degree of negligence which shows an utter disregard of prudence amounting to a complete neglect of the safety of another. A jury question is presented if reasonable men may differ as to whether the evidence and all fair inferences therefrom bring the case within this definition. *Chappell* v. *White, supra; Wright* v. *Osborne, supra.*

Parker knew that while the boulevard was forty feet wide, ice and snow on each edge made it slippery. He deliberately drove his car on or near the center line. He saw lights of an approaching vehicle several hundred yards away. He continued in a straight course down the center of the boulevard and did not maintain a proper lookout for the approaching car, and, in fact, did not see it until it was within forty-five feet of him, and then took no action to avoid the collision. If his left wheels did not cross the center line of the boulevard, they went so close that another vehicle an equal distance from the center traveling in the opposite direction could not pass in safety. These facts were sufficient to take the question of Parker's gross negligence to the jury.

Each driver, in plain view of the other, drove his vehicle on or so near the center of a wide highway that neither could pass the other in safety. It was just as much the duty of one as it was the other to turn to his right. Failure to do so convicts both of negligence, and, under the

circumstances, is a violation of that part of section 61 (a), of the Motor Vehicle Code (Michie's Code, sec. 2154 (108) (a) ), which provides "any person who drives a vehicle upon a highway recklessly * * * or in a manner so as to endanger the life, limb or property of any person, shall be guilty of reckless driving."

Our conclusion is that the trial court committed reversible error when, at the conclusion of plaintiff's case, on motion of defendants, it struck her evidence, and refused to submit to the jury the question of whether Bufano was guilty of simple or ordinary negligence, and whether Parker was guilty of gross negligence.

The judgment of the trial court is reversed and the case remanded for a new trial, to be had in accordance with the views herein expressed.

*Reversed and remanded.*