## Richmond

J. S. Dishman, Adm'r, Etc. v. Thomas J. Pitts, Adm'r, Etc.

March 6, 1961.

Record No. 5183.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Richard L. Williams* (*Bremner, Neal, Harris, Williams & Battle*, on brief), for the plaintiff in error.

*Joseph A. Billingsley, Jr.*, for the defendant in error.

I'Anson, J., delivered the opinion of the court.

The plaintiff, Thomas J. Pitts, administrator of the estate of Thomas Linwood Pitts, deceased, instituted this action against the defendants J. S. Dishman, administrator of the estate of Robert Alan Agnew, and Orten Dewey Haislip, Royal B. Harris, L. J. Long, and Hespenheide & Thompson, Inc., seeking damages for the wrongful death of his decedent. It was alleged in the motion for judgment that Agnew,

driver of the automobile in which Pitts was riding as a guest passenger at the time of his death, was guilty of gross negligence, and that the other defendants were guilty of simple or ordinary negligence in the operation of their vehicles.

The action was tried by a jury, and at the conclusion of all the plaintiff's evidence motions made by all the defendants to strike the plaintiff's evidence were sustained, except as to the administrator of Agnew's estate. At the conclusion of all the evidence the defendant, Agnew's administrator, renewed his motion to strike the plaintiff's evidence on the ground that it was insufficient to show gross negligence and the motion was again overruled. The jury returned a verdict for the plaintiff against the defendant in the amount of $10,000. Judgment was entered on the verdict and the defendant is here on an appeal.

The defendant contends that: (1) the evidence was not sufficient to base a finding of gross negligence on the part of Agnew; and (2) the court erred in granting plaintiff's instruction No. 5.

The accident, which resulted in the deaths of Thomas L. Pitts and Robert Alan Agnew, happened on July 23, 1958, around 1:20 P. M., on State highway route No. 3 in King George county, approximately 12 miles from the city of Fredericksburg. Agnew, 21 years of age, was driving a 1953 Plymouth automobile in a westerly direction, with Thomas L. Pitts, aged 17, as a guest passenger. The Agnew car collided with a tractor-trailer traveling east, which was owned by Royal B. Harris and operated at the time by Arthur Dewey Haislip.

The road was black topped, 22 feet wide, generally straight and level, and divided by a white center line into an eastbound lane and a westbound lane of equal widths. Near the point of the collision there was a slight curve in the road, but it did not affect visibility on the highway for approximately 200 yards. It was raining and the road was wet when the accident occurred.

Haislip was called by the plaintiff as an adverse witness, and he testified that he was traveling east on his proper side of the highway at a speed of approximately 40 miles per hour, with the tractor's bright lights burning and the windshield wipers on. He first saw the Agnew automobile about 200 yards away from him, with its parking lights on, traveling west on its proper side of the highway. He did not have an opportunity to estimate the speed of the Agnew car as it approached his truck, but thought it was going faster than his vehicle. Haislip further stated that when the Agnew car was approximately

50 to 75 feet from him it suddenly came over the white center line, went into a skid and a 180-degree turn, ending up in his lane of travel, with the front of the tractor colliding with the rear of the automobile. He had no chance to put on his brakes before the truck struck the automobile.

Sanford Johnson, Jr., a 12-year-old boy who was riding in the cab with Haislip, testified that when he first saw the Agnew automobile it was on its right side of the road but he did not know how far away the car was at the time since he was not a good judge of distances. He did, however, point out an object from the witness chair that was estimated to be about 100 feet from him, and stated that the automobile was about that same distance from him when he first saw it. He stated that the automobile then gradually came halfway over the white line in the truck's lane, heading straight for the truck, skidded, and did a complete 180-degree turn, ending up in their lane with the rear of the automobile under the tractor of the truck. On cross-examination the witness was asked:

"Q. And the first thing you knew about any accident going to happen was when you saw this oncoming car which at first was in its proper lane and then which very suddenly veered over into your lane and then did a complete 180-degree flip; is that right?

"A. Yes, sir."

L. J. Long, who was operating an automobile owned by Hespenheide & Thompson, Inc., was called by the plaintiff as an adverse witness. He testified that he was following the tractor-trailer at a speed of 45 to 50 miles per hour, and that when he turned out into the left lane of the highway to see if he could pass the truck, he saw a vehicle dart out from in front of the tractor-trailer and then back in just before the collision occurred.

State trooper Estes investigated the accident and testified that the two rear tires on the Agnew car were slick but one of them had some tread on it. He stated that the tread on the two front tires was good.

Larry Gunn, who was traveling in the same direction on route No. 3 as the Agnew car, testified that Agnew passed him at a speed of 45 to 50 miles per hour about 5 or 6 miles before the place of the accident. He further stated that after the car passed him Agnew was driving in his proper lane and not at an excessive speed.

The Agnew automobile was purchased by young Agnew's father a little over a month before the accident. Just prior to the sale it had been reconditioned and passed the State vehicle inspection. There

was uncontradicted evidence that the two rear tires on the Agnew car, described by the trooper as being slick, would have passed the State vehicle inspection requirements. They were introduced in evidence by the defendant.

Code § 8-646.1 provides that a non-paying passenger shall not be entitled to recover damages for injuries from the operator of a motor vehicle unless such injuries result "from the gross negligence or wilful and wanton disregard of the safety" of such passenger.

The burden is on the party alleging gross negligence to prove by a preponderance of the evidence that the host operated his automobile in such a manner as to show an " 'utter disregard of prudence amounting to complete neglect of the safety' " of his guest, and that such negligent operation proximately caused the accident complained of and the resultant injury. *Keen* v. *Harman*, 183 Va. 670, 675, 33 S. E. 2d 197, 198, 199; *Richter* v. *Seawell*, 183 Va. 379, 382, 32 S. E. 2d 62, 63; Code § 8-646.1.

Proof of gross negligence depends upon the facts and circumstances of each particular case. If reasonable men may differ as to the conclusion of fact to be drawn from the evidence, a jury question is presented; but if reasonable men may not differ as to the conclusion of fact, the question of gross negligence becomes a question of law for the court, notwithstanding a jury verdict. *Alspaugh* v. *Diggs*, 195 Va. 1, 5, 77 S. E. 2d 362, 364.

The defendant argues that the evidence is insufficient to show gross negligence on the part of his intestate because the cause of the accident, for all practical purposes, was unexplained.

In *Keen* v. *Harman, supra*, the administrator of a guest riding in the cab of a truck brought an action against the administrator of the driver of the truck alleging gross negligence. The evidence showed that, for some unexplained reason, the right wheels of the truck ran off the hard surface on the soft shoulder of the road and the driver, in the process of getting all four wheels back on the hard surface, lost control of the truck. The road was wet and there was no evidence of excessive speed. In reversing a judgment for the plaintiff, this Court held that there was insufficient evidence of gross negligence to submit the issue to the jury; that what caused the driver to lose control was not proven; and that the accident might have been caused by inadvertence, the driver becoming ill, or malfunctioning of the vehicle, among other causes.

In *Richter* v. *Seawell, supra*, an action was brought for the wrong-

ful death of plaintiff's decedent while riding in a car operated by the defendant's decedent. The accident occurred at night on a paved, straight, four-lane highway. Marks on the road indicated that the car had traveled along the right-hand dirt shoulder of the road for a distance of 118 yards, then it swerved to the left, and after skidding sideways 222 feet diagonally across the hard surface and left shoulder it went down an embankment and struck a tree with such force that the car was demolished. This Court, in reversing a judgment for the plaintiff, stated that there were sufficient facts proved to justify an inference of considerable speed, but there was no showing that the speed was so great as to constitute gross negligence or the proximate cause of the accident, and that there was no showing of what caused the car to go out of control, which could have been for numerous reasons. The Court recognized that gross negligence may be proved by circumstantial evidence (citing *Hackley* v. *Robey*, 170 Va. 55, 195 S. E. 689), but stated that in order for the plaintiff to prevail the evidence must show something more than that the injuries complained of may have resulted from one of two causes, for one of which the defendant is responsible and for the other of which he is not.

See also *Barnes* v. *Barnes, Adm'r*, 199 Va. 903, 907, 103 S. E. 2d 199, 202; *Lane* v. *Hampton, Adm'r*, 197 Va. 46, 50, 87 S. E. 2d 803, 806; *C. & O. Ry. Co.* v. *Seay*, 195 Va. 566, 572, 79 S. E. 2d 631, 634.

It is clearly evident that the Agnew car suddenly went out of control for some unknown reason. The evidence shows that when the Agnew car was meeting the tractor-trailer from 200 yards away it was on its proper right-hand side of the road. At a point 100 feet away from the tractor-trailer it was on its proper side of the road, traveling in excess of 40 miles per hour but as to how much more the evidence is silent, and there was no testimony that it was traveling beyond the lawful speed limit. At some point within the 100 feet, estimated at from 50 to 75 feet by Haislip, while the tractor-trailer was traveling at a speed of 40 miles per hour and the car was traveling faster, the car went halfway over the center white line into the tractor-trailer's lane of travel, skidded and made a 180-degree turn, completely reversing its direction, with its rear striking the front end of the tractor-trailer. The unusual movement of the car occurred very suddenly and, as Haislip said, before he could put on his brakes.

The movement of the Agnew car brought about a tragic result, but there is nothing in the evidence to show what caused Agnew to suddenly lose control of his car. It could have been due to any number

of reasons. Agnew could have become suddenly ill; the automobile might have malfunctioned in some way; he could have struck an obstruction in the road; he may have been guilty of inadvertence; he may have been blinded by the bright lights of the tractor-trailer; or he may have deliberately turned his vehicle to the left upon seeing the Long car pull into his lane of travel.

The plaintiff argues that Agnew was guilty of deliberate inattention and gross negligence, since he drove his automobile halfway over the white line on a two-lane highway, heading straight for the tractor-trailer, and traveled in this manner for some distance before the car went into the 180-degree skid and hit the tractor. He relies on *Smith, Ex'r v. Smith*, 199 Va. 55, 97 S. E. 2d 907, and *Smith v. Turner*, 178 Va. 172, 16 S. E. 2d 370, 136 A. L. R. 1251.

In *Smith, Ex'r v. Smith, supra,* the plaintiff was injured while riding as a guest in a car in which the driver was killed. The evidence shows that the accident happened at night on an open highway which was straight and level, affording an unobstructed view for half a mile. The driver of the car in which the plaintiff was riding drove her car on the wrong side of the highway for some distance and struck the left rear fender and bumper of a car traveling on its right side of the road, and continued on the wrong side of the road for a distance of 250 feet, colliding head on with an oncoming car which was in its proper lane. This Court held that the case was properly submitted to the jury on the question of gross negligence, since the only reasonable explanation of the driver's act was that she was asleep or recklessly inattentive to her duties.

In *Smith v. Turner, supra,* the accident occurred on a straight, level road where the view was unobstructed for a distance of several hundred yards. The driver of the car in which the plaintiff's intestate was a guest passenger testified that she saw the Turner car 800 feet away from her and it was being driven "all over the road, first on one side and then on the other," and "going very fast." She stated the collision occurred on her side of the road. The driver of the Turner car testified that when he first saw the Smith car it was 50 yards from him, on Turner's side of the road, and that the collision occurred on his side of the road. The jury returned a verdict for both defendants, and on appeal this Court held that the verdict was plainly contrary to the law and the evidence, set the verdict aside, and ordered a new trial since plaintiff was entitled to recover of one of the defendants, if not of both; that driving on the wrong side of the highway, in

violation of Code § 46.1-203, does not necessarily constitute gross negligence; that one who inadvertently permits the left-hand wheels of his car to pass to the left of the center line of an open road is not guilty of gross negligence, but needlessly driving on the wrong side of a straight road, in broad daylight, in the face of a car rapidly approaching from the opposite direction and in plain view, is gross negligence.

The above cases relied on by the plaintiff are clearly distinguishable from the instant case. The evidence in those cases shows deliberate inattention by driving on the wrong side of the road for considerable distances before the collisions; whereas, the evidence in the case at bar shows that Agnew's car suddenly veered across the center line and went into a 180-degree skid, all within a matter of seconds.

The trial court in its written opinion cites the case of *Mountjoy* v. *Burton*, 185 Va. 936, 40 S. E. 2d 803, in support of its ruling that there was sufficient evidence of gross negligence to allow the issue to go to the jury. In this case the Mountjoy automobile, in which the plaintiff's decedent was riding as a passenger, crossed a four-lane highway and collided with a bus traveling in the opposite direction. The evidence showed that the Mountjoy vehicle was greatly worn from use; that the rear tires were worn and without tread; that it was raining at the time of the accident and the road was wet and slippery; that there was a defect in the front end of the car which rendered it dangerous to drive at a high rate of speed; that the defendants knew about the defective condition of the car; and that there was testimony that the automobile was traveling at a speed of 80 miles per hour just before the collision.

The *Mountjoy* case is readily distinguishable from the case now before us. There is no evidence that the Agnew car was traveling at an excessive rate of speed or that it had any mechanical defect which was known to Agnew. While there is testimony that the two rear tires on the Agnew car were slick, the uncontradicted evidence is that they would pass the State vehicle inspection requirements.

We hold that the plaintiff has not shown by a preponderance of the evidence that Agnew was operating his automobile in " 'utter disregard of prudence amounting to complete neglect of the safety' " of his guest, which was a proximate cause of the accident. To say what caused the Agnew car to suddenly go out of control, when up to that point it was properly operated, would be pure speculation and conjecture.

Having reached the conclusion that the evidence is insufficient to show gross negligence on the part of Agnew, it becomes unnecessary to discuss the other assignment of error.

For the reasons given, the judgment of the court below is reversed and final judgment is here entered for the defendant.

*Reversed and final judgment.*